ESTATE OF CHARLOTTE D. M. CARDEZA, FIDELITY-PHILADELPHIA TRUST COMPANY AND THOMAS D. M. CARDEZA, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 327.    Promulgated June 11, 1945.

*William R. Spofford, Esq., H. Ober Hess, Esq.,* and *J. Harry Wagner, Jr., Esq.,* for the petitioners.

*Brooks Fullerton, Esq.,* for the respondent.

OPINION.

VAN FOSSAN, *Judge*: The first issue for our determination is whether the value of two-thirds of the corpus of the Drake trust is includible

in the decedent's gross estate as property passing under a general power of appointment by virtue of the provisions of section 811 (f) of the Internal Revenue Code, prior to its amendment by section 403 (a) of the Revenue Act of 1942.[1]

The petitioners contend that nothing may be included in the decedent's estate by virtue of section 811 (f), since nothing in fact passed under the power. They contend that, although the decedent in her will attempted to exercise the power of appointment given to her by her father, her son renounced the benefits to which he was entitled thereunder; that this renunciation was accepted by the Orphans' Court and that Thomas Cardeza received no part of the property over which the decedent had the power of appointment; that the exercise was therefore rendered ineffectual and that nothing passed thereunder. In support of this contention, they rely upon *Helvering* v. *Grinnell*, 294 U. S. 153.

In that case the decedent by will exercised a power of appointment in favor of the persons who would have taken the same estate in default of appointment. After her death, the appointees, in writing, renounced the right to receive the property under her will and elected to take under the will of the donor of the power.

The respondent attempted to include the value of the property in the decedent's gross estate upon the ground that it had passed under the power of appointment. He contended that the tax was imposed upon the power to transmit or the transmission of property by death; that the shifting of the economic benefits in property is the real subject of the tax; and that the property had passed under the general power of appointment within the meaning of the statute.

The Supreme Court, however, held that no property passed under the power or as a result of its exercise "since that result was definitely rejected by the beneficiaries." In answer to the respondent's contention the Court said:

* * * But this [argument] involves the obviously self-destructive conclusion that an unsuccessful attempt to effectuate a thing required by the statute is the same as its consummation. The tax here does not fall upon the mere shifting of the economic benefits in property, but upon the shifting of those benefits by a particular method,—namely, by their *"passing"* under a general power of appointment," and not otherwise. Acceptance of the Government's contention would strip the italicized word of all meaning.

The respondent does not deny the similarity of the case at bar to *Helvering* v. *Grinnell, supra.* However, he contends that the *Grinnell*

---

[1] SEC. 811 GRÓSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * * *

(f) PROPERTY PASSING UNDER GENERAL POWER OF APPOINTMENT.—To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, * * *

case is now applicable only where the beneficiaries' estate in default of appointment is the exact equivalent of that which they would have received under the exercise of the power. In support he contends that the Supreme Court in *Rogers' Estate* v. *Helvering*, 320 U. S. 410, held that title passes within the meaning of section 811 (f) by the mere exercise of the power and that the Court thus overruled "by implication the *Grinnell* case as to the supposed rule that title could not pass because of renunciation as well as the supposed rule that the title did not pass by the exercise of power. All that remains of the *Grinnell* case is the theory of equivalence, where the exercise of the power merely echoes the will."

We are unable to agree. *Rogers' Estate* v. *Helvering*, *supra*, was a case in which the donee of a power of appointment gave to his appointees a lesser estate than they would have taken from the will of the donor had there been no exercise of the power. No renunciation was filed by the appointees and the donee's estate was distributed in accordance with the terms of his will. It was contended that nothing passed under the power of appointment, since the appointees received less than they would have received had there been no appointment.

The Supreme Court held that the property passed under the power of appointment, since the precise estate which the appointees received came into being solely by virtue of the exercise of the power by the decedent. Said the Court:

\* \* \* For the purpose of ascertaining the corpus on which an estate tax is to be assessed, what is decisive is what values were included.in dispositions made by a decedent, values which but for such dispositions could not have existed.

Here, however, it is clear that no new values were brought into existence as the result of the exercise of the power by the decedent, since, in the language of the *Grinnell* case, "that result was definitely rejected by the beneficiar[y]." Thomas Cardeza rejected the benefits to which he was entitled under the power, thus rendering the exercise thereof ineffectual and preventing anything from passing thereunder.

Apart from what we have said, there is another reason for holding that nothing passed under the power. In its adjudication, the Orphans' Court of Philadelphia County gave effect to the renunciation and ordered that the property over which the decedent had the power of appointment should be held by the trustees and not distributed to the decedent's son, as it would have been had the exercise of the power been effective. The view of the state courts charged with the determination of these questions is the authority we should follow wherever ascertainable. *Estate of Mary Adele Morris*, 38 B. T. A. 408; cf. *Estate of Cassius E. Wakefield*, 44 B. T. A. 677; *Estate of Frederick R. Shepherd*, 39 B. T. A. 38.

This principle was recognized too in the *Rogers* case, the Court saying:

Whether by a testamentary exercise of a general power of appointment, property passed under Section 302 (f) [now sec. 811 (f), I. R. C.] is a question of Federal law, once State law has made clear, as it has here, that the appointment had legal validity and brought into being new interests in property. See *Helvering* v. *Stuart*, 317 U. S. 154.

Here the law of Pennsylvania, as declared by a court of that state, has made it clear that the exercise of the power of appointment was ineffectual and created no new interests in property.

We hold, therefore, that the present case is governed by *Helvering* v. *Grinnell, supra,* and that no amount is includible in the decedent's gross estate under section 811 (f) as property passing under a general power of appointment.

In the alternative, the respondent contends that the value of two-thirds of the corpus of the Drake trust must be included in the decedent's estate as intestate property of Drake. His contention may be summarized as follows:

By item fourthly of the trust, Thomas Drake provided that should the decedent die without having executed the power of appointment, then the trustees should pay her share of the net income to the testator's grandchildren. The decedent, however (so the argument goes), did, in fact, exercise the power and this exercise defeated the estate in default of appointment under both the terms of the trust and the law of Pennsylvania; and, consequently, upon Thomas Cardeza's renunciation of the benefits to which he was entitled under the power, an intestacy occurred in the estate of Thomas Drake as to this property, which intestacy related back to the date of his death, and the decedent inherited the property as his sole heir at law.

This contention can not be sustained. It has been held in Pennsylvania that in the absence of expressed contrary intention a legacy bequeathed in default of appointment vests in the legatee on the death of the testator, subject to be divested by the power of appointment. *In re Freeman's Estate*, 55 Pa. Super. 185; approved, *In re Freeman's Estate*, 280 Pa. 273; 124 Atl. 435. And this rule applies although the estate limited over in default of appointment is an equitable estate rather than a legal one. Cf. *Cowman* v. *Classen*, 156 Md. 428; 144 Atl. 367; see Simes, Law of Future Interest, vol. 1, § 96, p. 162.

In *In re Freeman's Estate, supra,* the donor's will provided that the trust income should be paid to the donor's six children for life and, "from and after the death of either of my sons or daughters and until the death of all of them, to pay income which he or she would, if living, have received, to such person or persons of kin to such son or daughter as he or she may by will have appointed and in default of appointment to the child or children of such son or daughter that may then be living or the issue of any child or children of such son or daughter that may then be dead."

While the language used by the testator in the case at bar is not the same as that used in the *Freeman* case, it does not appear to be so substantially different as to take the instant case out of the rule expressed therein.

The question then is whether or not the exercise of the power by the decedent was sufficient to defeat the estate in default of appointment. The answer, we think, must be in the negative. The rule is stated thus in 41 Am. Jur., Powers, § 85:

> There can, of course, be no doubt that the rule is that when an attempted appointment in pursuance of a general power completely fails, the subject of the power devolves uninfluenced by the attempt. In case of failure of remainders attempted to be created by the donee of a power, the estate represented by them will be distributed according to the provisions of the will of the donor of the power where it attempts to dispose of the estate in case the power is not exercised. * * *

See also *Graham* v. *Whitridge*, 99 Md. 248; 57 Atl. 609; *Northern Trust Co.* v. *Porter*, 368 Ill. 256; 13 N. E. 487.

Here the attempted appointment failed because the beneficiary refused to accept the benefits attempted to be conferred thereby. In *Matter of Lansing's Estate*, 182 N. Y. 238; 74 N. E. 882, it was held that "An appointee under a power has the right of election the same as a grantee under a deed. * * * He can accept the title tendered or reject it, in his discretion. It cannot be forced upon him against his will. * * * Declining or refusing to take has the same effect as incapacity to take * * *. The title is not affected, but remains where it was before. * * *"

No case has been cited to us nor have we discovered any, holding the law of Pennsylvania to be different in this respect from the law of New York.[2] The Orphans' Court of Philadelphia County has distributed the trust estate in accordance with these principles, and, under the rule stated in *Estate of Mary Adele Morris, supra; Estate of Cassius E. Wakefield, supra;* and *Estate of Frederick R. Shepherd, supra*, we must accept its action as an expression of Pennsylvania law.

Consequently, the attempted exercise of the power, being ineffective, did not defeat the estate in default of appointment. Legal title to the trust corpus remained in the trustees to pay the income thereof to Thomas Cardeza during his life, in accordance with the will of Thomas Drake.

---

[2] In *Rothensies* v. *Fidelity-Philadelphia Trust Co.*, 112 Fed. (2d) 758, at p. 763, the Circuit Court of Appeals for the Third Circuit draws a parallel between New York law and Pennsylvania law in dealing with a question akin to the one presented here, although it is not the same question. There the court says:

"It is clear that under the law of Pennsylvania * * * a devisee over under a donor's will in default of appointment who is also an appointee under the donee's will in the exercise of the power takes from the will of the donor and not from the donee. The law of Pennsylvania in such regard is similar to the law of New York by which the question of title was determined in the Grinnell case * * *."

A further question arises as to the disposition of the corpus producing two-thirds of the income on the death of Thomas Cardeza. If he has a child or children they, of course, will take the corpus under item fourthly. There are no other grandchildren of Drake, however, and there can be none. Consequently, if Thomas should die without issue an intestacy will result in Drake's estate, for reasons which we shall discuss later, as to the corpus producing the two-thirds of the trust income and the decedent or her estate will come into possession of the property, as she was his only heir.

We are of the opinion, however, that, even if such an intestacy is possible in the event Thomas Cardeza dies without issue, there is nothing that may now be included in the decedent's estate. Section 811 (a) of the code provides that the value of the gross estate shall be determined by including the value at the time of the decedent's death of all property, "To the extent of the interest therein of the decedent at the time of his death." The regulations[3] contain a similar provision.

Here the decedent clearly had no interest in the principal producing two-thirds of the trust income at the date of her death. She had merely a life interest in the income, with a power to appoint the remainder, which power was not effectively exercised. The Drake will provides for the devolution of the trust corpus in the event of such a failure to exercise the power and it is only in the event of the death of her son without issue and the consequent failure of remaindermen, which event must necessarily take place long after her own death, that the decedent or her estate can have any interest in the property.

To attempt to value, as of the date of the decedent's death, such a highly contingent and remote interest and include anything in her gross estate on account thereof would, in our opinion, be "mere speculation bearing the delusive appearance of accuracy." *Humes* v. *United States*, 276 U. S. 487.

Therefore, we sustain the petitioner.

The next issue is whether the remaining one-third of the corpus of the Drake trust must be included in the decedent's gross estate as intestate property.

By item thirdly of the trust, Thomas Drake directed his trustees to pay "the other remaining one-third of the rest, residue and remainder of the net income of my estate unto my grandson, Thomas Drake Martinez-Cardeza, during all the term of his natural life * * *." Upon his death they were directed to pay the principal producing the same to his children or their issue, less an annuity to his wife for life in such an amount, not exceeding $10,000, as he might by will direct.

---

[3] Regulations 105, sec. 81.13.

The respondent has included in the decedent's gross estate the value of one-third of the corpus of the Drake trust, diminished by the value as of the date of the decedent's death of Thomas Cardeza's life estate and of a $10,000 annuity for his widow, on the ground that such one-third is intestate property in the estate of Thomas Drake, since Thomas Cardeza has no issue at present and the possibility of his ever having issue is remote. He argues that it is, therefore, intestate property in the estate of the decedent, she being Thomas Drake's sole heir at law.

The petitioners contend that, even if an intestacy is possible in that Thomas Cardeza may die without issue, that possibility is not now certain or of sufficient standing to control the direction of property in the decedent's estate within the meaning of section 811 (a) of the code, since there is no presumption that a person will not have issue.

The respondent concedes the existence of a presumption that there is always a possibility of issue, but contends that it is rebuttable and that the possibility of Thomas' having issue was so remote at the date of decedent's death that the presumption should not be applied in the present proceeding.

To sustain the respondent's position we must not only value, as of the date of the decedent's death, the life estate of Thomas Cardeza, but must say conclusively that he will die without children. Such a holding would ignore the realities of the situation.

The presumption that there is always a possibility of issue is firmly established. It has been applied in Pennsylvania to women 63 and 59 years of age (*Straus' Estate*, 307 Pa. 454; 161 Atl. 547) and in one case was applied to a woman 78 years of age (*Sterrett's Estate*, 300 Pa. 116; 150 Atl. 159).

The presumption is not irrebuttable, of course, and will fall before sufficient competent evidence that the possibility of issue is extinct by reason of an operation. See *United States* v. *Provident Trust Co.*, 291 U. S. 272; and *City Bank Farmers' Trust Co.* v. *United States*, 74 Fed. (2d) 692, where it was held not to apply to a woman 59 years of age where statistics showed overwhelmingly that there was little or no possibility of a child being born to a woman of that age.

In the instant case, however, there is no evidence to rebut the presumption. It is stipulated that in the opinion of a qualified physician there is no physical impediment to Thomas Cardeza's capacity to have children. At the time of the hearing he was a widower, but it is entirely possible that he may again marry and that issue may be born of this union. That the respondent recognizes the possibility of remarriage is shown by the fact that, in determining the amount to be included in the decedent's estate, he has deducted an amount repre-

senting the value of the life annuity to be paid to Thomas Cardeza's widow.

What we said above with respect to the speculative character of any attempt to value an interest of the decedent in two-thirds of the trust estate is equally applicable here. At the present time, we are unable to say that Thomas Cardeza will die without issue, or that any contingent interest or expectancy which the decedent had, or her estate may have, because of the happening of such an event is a property right capable of valuation on the date of her death. See *Humes* v. *United States, supra.*

The next issue is whether or not there is to be included in the decedent's gross estate the amount necessary to produce the $5,000 annuity given her by the will of Thomas Drake.

The respondent's contention as to this issue is substantially as follows: In item firstly of the trust, Thomas Drake directed his trustees to pay his daughter, the present decedent, the sum of $5,000 per annum for life, to be used by her in charitable works. While he made provision for the disposition of the remainder of the trust estate, nowhere did he provide for the future disposition of either the corpus producing the $5,000 annual income or the income itself. Consequently, as to this amount Thomas Drake died intestate and the decedent inherited this property as his only heir at law. As an alternative argument, the respondent contends that, where a life estate is granted in property and no provision is made for a remainder or reversion, the grantor of the life estate must be presumed to have intended to convey the fee, and the life estate and fee are merged in the grantee, the decedent here. The respondent thereupon argues that the corpus is includible in her estate.

The petitioners contend that there is no intestacy in the estate of Thomas Drake; that, when properly construed, the Drake will provides for a complete devolution of all the testator's property, leaving no portion thereof undisposed of. They contend that provision for the disposition of the amount producing the $5,000 annuity is found principally in items fourthly and seventhly. They contend that should Thomas Cardeza have issue the principal amount producing the annuity would be divided among such issue after his death, under item fourthly, since that clause of the trust provides that the "principal sums" producing the decedent's share of the income shall be distributed, and that the use of the plural denotes an intention on the part of the testator to dispose of this amount, as well as the two-thirds of the remainder of the trust estate; and that in the event Thomas should die without issue the amount in question would be held in trust for the college, in accordance with the terms of item seventhly.

The respondent does not seriously deny that the language of item seventhly is broad enough to include the principal sum producing the

annuity, but contends that this clause can not become effective, since the decedent left her son surviving her.

The petitioners assert, however, that the expression used in this paragraph of the will, "to whom my estate could descend by process of law," is the equivalent of "to whom my estate could decend under the terms of my will"; that under the terms of the will Thomas Cardeza can never receive the two-thirds part of the trust estate, since the date of his death is the date fixed for distribution. Therefore, they argue, in the event Thomas dies without issue there will be no one to whom the estate can descend under the will and the principal sum producing the $5,000 annuity, together with the two-thirds of the remainder of the trust estate, will be disposed of according to the terms of item seventhly.

We believe the petitioners' interpretation of item seventhly is erroneous. There can be no doubt that the ordinary meaning of the words "descend by process of law" is to descend according to the laws of intestate succession. There is no evidence that Thomas Drake intended them to have any other than their ordinary meaning. Consequently, he must have intended to include thereby those persons to whom the estate could descend other than by the terms of his will.

Since this is so, item seventhly can not come into operation, since the decedent was survived by her son, Thomas Cardeza, a person to whom the estate "could descend by process of law."

It does not follow from this, however, that the corpus producing the $5,000 annuity is therefore to be included in the decedent's gross estate. By item fourthly of the trust, Thomas Drake provided that should the decedent die without having exercised the power of appointment, then the trustees should pay her share of the net income to all his grandchildren in equal shares for the life of Thomas Cardeza, "and upon his death they shall divide and distribute the principal sums producing said income to and among all my grandchildren * * *." In item secondly he had directed that the "principal sum" producing the two-thirds of the net income should be paid to the decedent's appointees. We think the use of the plural "sums" in fourthly must reasonably be construed to indicate an intention on the part of the testator that the principal sums producing both the two-thirds of the net income of the estate and the $5,000 annuity should be distributed to his grandchildren and their issue on the death of Thomas Cardeza. Since there were no other grandchildren, distribution can be made only to the issue of Thomas Cardeza.

The question then arises as to what disposition will be made of the principal producing the $5,000 annuity and the two-thirds of the remainder of the income from the trust estate in the event Thomas Cardeza dies without issue. Apparently an intestacy would then result in Drake's estate as to these amounts. This intestacy would

relate back to the date of his death and his heirs would be determined as of that time. *In re Bell's Estate*, 147 Pa. 389; 23 Atl. 577; *Moore v. Deyo*, 212 Pa. 102; 61 Atl. 884; *In re Gorgas' Estate*, 248 Pa. 343; 93 Atl. 1073. As we have already noted above, however, nothing is now includible in the decedent's gross estate because of any remote contingency or possibility that she or her estate might, at some future time, come into possession of a part of the trust corpus as intestate property of Thomas Drake.

What we have said concerning the includibility in the decedent's estate of the corpus producing two-thirds of the trust income in the event Thomas Cardeza should die without children applies with equal vigor to the corpus producing the $5,000 annuity. We hold, therefore, that this amount is not to be included in the decedent's gross estate.

The next issue concerns the donations which the decedent made to the trustees to enable them to exercise the stock warrants which they held but were unable to exercise with the trust funds because of Pennsylvania law and the limitations in the Drake will.

The issue is divided into two parts: As to two-thirds of these donations the respondent contends that they constituted transfers in trust or otherwise, the enjoyment of which was subject at the date of the decedent's death to change through the exercise of a power to alter, amend, or revoke, and are therefore includible in the decedent's gross estate under section 811 (d) of the code.[4]

He contends that the other one-third of the donations, less the value of Thomas' life estate, is includible in gross estate under section 811 (c).

The facts show that under the terms of the Drake trust the trustees were limited in their investment to legal investments for trustees. Under Pennsylvania law, they were thus prohibited from investing in stock of private corporations. Included in the original trust corpus were certain stocks which the trustees were permitted to retain. The corporations which had issued these stocks later issued stock subscription warrants which the trustees were unable to exercise because of the limitations in the Drake trust. Consequently, the decedent from time to time donated amounts to the trustees to enable them to exercise these warrants.

---

[4] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * * *

(d) REVOCABLE TRANSFERS—

* * * * * * *

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend or revoke * * *

The respondent contends that these funds and the investment into which they were converted became part of the Drake trust and as much subject to its terms as were the original holdings of the trust and that each time the decedent made a contribution to the trust she, in effect, adopted its provisions as her own to the extent of the amount of contribution made. Thus, he argues, she had a life interest in two-thirds of the income produced by the contributions and also the power of disposal over the principal amounts thereof.

The petitioners contend that the decedent did not create trusts and that she did not spend these sums with any dispositive intent whatever. They contend that she did no more than spend cash to protect the holdings of the Drake trust and that the fact that the value of the trust estate was enhanced, or at least spared dilution, is of no consequence.

We think the respondent must be sustained. Manifestly, when the decedent made the donations to the trustees, such donations and the investment into which they were converted became part of the Drake trust. Indeed, the petitioners do not contend otherwise. As such, they became subject to all of the provisions of the original trust. Consequently, as to two-thirds of these contributions the decedent had the right to the income for life and the power to dispose of the remainder after her death. That such a power is sufficient to bring the transfers within section 811 (d) was decided in *Commissioner* v. *Chase National Bank*, 82 Fed. (2d) 157. See also *Porter* v. *Commissioner*, 288 U. S. 436.

As to the remaining one-third of the decedent's donations, the respondent contends that these payments, in effect, also constituted an *inter vivos* trust of the decedent, having the same terms as the Drake trust. He points to the fact that, under the terms of the trust, the net income from one-third of the estate was to be paid to Thomas Cardeza for life and at his death the principal was to be divided among his issue; however, if the decedent should survive all her children and their issue, the entire income of the trust was to be paid to her for life and upon her death the principal was to be paid to whomsoever she should appoint by will. This provision, concludes the respondent, makes one-third of her donations includible in gross estate as transfers intended to take effect in possession or enjoyment at or after the decedent's death, under section 811 (c).[5]

---

[5] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death \* \* \*.

The petitioners contend that the possibility of the decedent's contingent power of appointment ever coming into being is too remote to warrant the inclusion of the amounts in question in her gross estate.

The problem is whether the property must be included in the decedent's gross estate under the doctrine of *Helvering* v. *Hallock*, 309 U. S. 106, and related cases. It would serve no useful purpose to discuss the many cases which have been decided on this point. On the facts here presented, we think the respondent's determination must be sustained.

The income from the property was to be paid to the decedent's son for life and upon his death was to be distributed among his children and their issue *per stirpes*. However, if the decedent survived her son and all his descendants, the income was to be paid to her for life, with power to appoint the remainder. At the time the transfers were made and also at the date of the decedent's death, Thomas Cardeza was childless. There was only 21 years difference in their ages. Under such circumstances, we do not think it can be said that the decedent disposed of her property as completely as she could or that there was only a very remote possibility that it would revert to her. There was, we think, a very real possibility that the decedent would survive her son. In this respect the case is similar to *Fidelity-Philadelphia Trust Co. (Stinson Estate)* v. *Rothensies*, 142 Fed. (2d) 838; affd., 324 U. S. 108.

There the grantor created a trust providing that the income should be paid to the settlor for life and upon her death to her daughters in equal shares during their respective lives, and at their deaths to their issue. In the event of the death of both daughters without leaving surviving descendants, the corpus was to be paid to such persons as the settlor should appoint by will. Both daughters survived their mother and at the date of her death were unmarried.

The trust property was held includible in the decedent's gross estate, since she had retained a "string or tie" whereby, on the happening of certain contingencies, she could regain control of the corpus of the trust, at least to the extent of making it subject to testamentary bequests. The following language of the court is particularly apposite to the facts before us:

* * * The indenture in the case at bar * * * puts the remainders in the grantor's grandchildren, who were not *in esse* at the time the indenture was executed and the grantor could have recovered the right to dispose of the corpus on the happening of the specified contingencies. For these reasons, the case at bar is closer to *Klein* v. *United States*, 283 U. S. 231, than to *May* v. *Heiner*, 281 U. S. 238.

The possibility of reversion in the instant case is not so remote as it was in *Lloyd's Estate* v. *Commissioner*, 141 Fed. (2d) 758. There

the life beneficiaries were given general powers of appointment over the corpus and in the absence of such appointment the corpus was to go to their respective wives and issue. The grantor could recapture the trust corpus only in the event the beneficiaries failed to exercise their power and he survived their respective wives and issue.

We hold, therefore, that the value as of the date of her death of one-third of the decedent's donations to exercise the stock warrants is includible in gross estate under section 811 (c). Cf. *Estate of William Walker*, 4 T. C. 390.

The next issue is whether the sum of $25,000 which the decedent's will directed to be held in trust for the perpetual maintenance of the Drake mausoleum is deductible from gross estate as a funeral expense under section 812 (b) (1). That section allows a deduction for such amounts as funeral expenses as are allowed by the laws of the jurisdiction under which the estate is being administered.

The petitioners contend that the amount in question is deductible under Pennsylvania law by virtue of 20 Pa. Stat., sec. 2302, which allows deductions for Pennsylvania inheritance tax purposes for "debts of the decedent, reasonable and customary funeral expenses, bequests or devises in trust, in reasonable amounts, the entire interest or income from which is to be perpetually applied to the care and preservation of the family burial lot or lots, their inclosures and structures erected thereon, reasonable expenses for the erection of monuments or gravestones, graves and lot markers and the expenses of administration of such estates   *   *   *."

The respondent contends that this section is not determinative of a deduction under the Federal estate tax law and that, in any event, since the Pennsylvania statute allows a deduction for such bequests, separate from that allowed for funeral expenses, it is doubtful whether such an expense is a funeral expense under Pennsylvania law.

The respondent's contention is without merit. The Pennsylvania inheritance tax law is the state counterpart of the Federal estate tax law and the deductions allowed thereunder are to be given due consideration. That the deduction of bequests for perpetual maintenance of burial lots is mentioned separately from the general provision for funeral expenses is of no consequence. The statute is not to be read so literally. This, we think, is shown by the decisions of the Pennsylvania courts prior to the enactment of the statute wherein such bequests were allowed as a part of the funeral expenses.

In *Dingee's Estate*, 14 Pa. Dist. 225, a maintenance fund of $5,000 in an estate of $800,000 was held deductible as a part of the funeral expenses. In *Middleton's Estate*, 13 Pa. Dist. 811, the court said:

*   *   * The purchase of a burial lot is often a necessary item in the list of funeral expenses and the erection of a tombstone therein has been judicially

determined to belong to the same class * * *. The continued care of a grave, however, is almost as essential as its purchase and without undue straining may be said to belong to the original expenses.

We think this sufficient to show the deductible character of the bequest under section 812 (b).

The respondent also disallowed the deduction "because it has not been paid and it is not certain that it will ever be paid." He has agreed, however, that if it is allowable under section 812 (b) he will allow the deduction upon proof that it has been paid or will be paid prior to the end of this proceeding. Adjustment for this amount can, therefore, be made in the recomputation under Rule 50.

The final issue concerns the deduction of executors' fees. Commissions have been paid to the decedent's executors in the sum of $22,180.35. The Orphans' Court allowed credit for the full amount of these payments in the adjudication of the executors' account, but allowed only $13,308.21 as a deduction for Pennsylvania inheritance tax purposes. The petitioners contend that the full amount paid should be allowed as a deduction from gross estate. The respondent, however, has limited the deduction to the amount allowed by the court for Pennsylvania inheritance tax purposes.

We think the petitioners must be sustained.

The regulations [6] provide that executor's and administrator's fees are properly deductible as a part of the administration expenses under section 812 (b). They further provide: "The executor or administrator, in filing the return, may deduct his commissions in such an amount as has actually been paid * * *."

It is not denied that the fees in question have been paid, nor does the respondent advance any reason why the regulations here should not be followed. Furthermore, considering the size and nature of the estate, we are of the opinion that the fees claimed are not unreasonable in amount. Cf. *Estate of Otto Jaeger*, 16 B. T. A. 897. Accordingly, we hold that the amounts paid are deductible.

In his deficiency notice, the respondent disallowed deductions for bequests by the decedent to the Chestnut Hill Hospital and the Society for the Prevention of Cruelty to Animals in the respective amounts of $10,000 and $5,000, solely upon the ground that they have not been paid. He does not dispute their deductible character and has agreed that the deductions will be allowed upon satisfactory proof that the amounts have been paid or will be paid. These items can be adjusted upon the recomputation under Rule 50.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[6] Regulations 105, sec. 81.33.