FIDELITY–PHILADELPHIA TRUST COMPANY and J. Reece Lewis, Executors of the Will of Anna C. Burr, Deceased, Appellants,

v.

UNITED STATES of America, Appellee.

No. 11407.

United States Court of Appeals
Third Circuit.

Argued Dec. 23, 1954.

Filed April 21, 1955.

As Amended on Denial of Rehearing
June 22, 1955.

Alfred J. McDowell, Philadelphia, Pa. (Frederick H. Knight, John Anthony Day, Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief), for appellant.

Robert B. Ross, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Sp. Assts. to the

Atty. Gen., W. Wilson White, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER, Circuit Judges and LORD, District Judge.

KALODNER, Circuit Judge.

Plaintiffs, Fidelity-Philadelphia Trust Company and J. Reece Lewis ("Fidelity"), executors of the will of Anna C. Burr, brought suit in the United States District Court for the Eastern District of Pennsylvania for a refund of federal estate tax in the amount of $8,215.13 plus interest. The District Court heard the case upon stipulated facts and ordered judgment for the defendant.[1]

The litigation concerns the amount properly deductible from the gross estate as executors' commissions in computing the federal estate tax. Fidelity claimed $79,366.31, the amount actually paid as executors' fees, as the estate's proper deduction. The Internal Revenue Agent in Charge assessed a deficiency in which he reduced the claimed deduction by $18,285.33, to $61,080.98. The reduction resulted in what Fidelity contends is an over-assessment of $8,215.13.

The relevant statutory provision in the 1939 Internal Revenue Code is Section 812(b) (2):

I.R.C. "§ 812. Net estate

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \*

(b) Expenses, losses, indebtedness, and taxes—Such amounts—

\* \* \* \* \* \*

"(2) for administration expenses, \* \* \* *as are allowed by the laws of the jurisdiction,* whether within or without the United States, under which the estate is being administered \* \* \*." 26 U.S.C.A. § 812. (Emphasis supplied.)

■ There is no statute in Pennsylvania governing the allowability of executor's fees so that we are compelled to resort to the decisions of its Courts to ascertain "the laws" to which Section 812(b) (2) refers.

The nub of the controversy presented relates to the interpretation to be placed upon an adjudication of the executors' account by the Orphans' Court of Philadelphia County. The Executors' account took credit for $79,366.31 as executors' commissions, 4 percent on personalty and 3 percent on realty. The Commonwealth of Pennsylvania opposed the payment of 4 percent for state transfer inheritance tax purposes, and asked that the commissions be reduced to 3 percent. The residuary legatee, the Lankenau Hospital ("Lankenau"), however, had approved the amount claimed by Fidelity and did not contest this amount before the Orphans' Court. In confirming the account the Orphans' Court ruled that "as concerns the residuary beneficiary, the commissions will stand, as stated in the account, because of its approval, but as to the Commonwealth in its claim for transfer inheritance tax the executors are surcharged with commissions at 1 percent." The United States contends that the sum allowed the executors with respect to the claims of Pennsylvania is the amount "allowed by the laws of the jurisdiction" for purposes of applying Section 812(b) (2). Fidelity, however, urges that the sum actually paid to the executors and allowed to stand by the Orphans' Court for all but state taxing purposes is the amount to be considered in applying this section.

■ In Pennsylvania it has long been settled that executor's commissions are to be fixed by a standard of "fair compensation", and this standard is to be applied by taking regard for the time, kind and relative complexity of the work entailed in the administration of the estate. In re Gardner's Estate, 1936, 323 Pa. 229, 185 A. 804; In re Harrison's

Estate, 1907, 217 Pa. 207, 66 A. 354; In re Young's Estate, 1902, 202 Pa. 431, 51 A. 1036. It is clear that this standard was employed by the Orphans' Court in fixing the amount of commissions to be allowed for Pennsylvania transfer inheritance tax purposes. The Orphans' Court stated:

> "After careful consideration I am unable to find in the services and responsibility of these executors and trustees justification for commissions of 4% against the claim of the Commonwealth. While valuable services have and will be rendered to the estate, I am convinced that they are not so extraordinary as to warrant such allowance in an estate of this size. *I find that 3% is fair compensation.*" (Emphasis supplied.)

█ It would seem therefore that $61,080.98 (3 percent) represents the amount properly deductible from the gross estate. This is so not merely because the Orphans' Court agreed with the Pennsylvania taxing authorities that that amount was a proper "allowance", but because both arrived at that figure by resorting to the criteria employed by the Pennsylvania courts in determining "allowability".

Fidelity contends, however, that the Orphans' Court has in fact allowed $79,366.31 to be paid to the executors and that therefore this amount has been "allowed by the laws of jurisdiction." We think the opinion of Judge Clary in the District Court effectively disposes of this contention:

> "The fact that Judge Hunter permitted the full payment to 'stand', he did *not* approve it, is easy to understand. Courts are loath to force persons to litigate. In the instant case, when this estate was before Judge Hunter in the Orphans Court there was no dispute between the executors and the legatee. The legatee was satisfied to pay to the executors, the then accountants, a fee higher than the court adjudged proper under the standards fixed by the law of Pennsylvania. A reading of the adjudication * * * shows clearly that the court in permitting the total executors' commission to 'stand' as a deduction for accounting purposes expressly decided that the higher sum was not one 'allowed by the laws of Pennsylvania', under the Pennsylvania standard of 'fair compensation'. In effect, the court merely stated that if the legatee wanted to pay more than the services were worth under the applicable law, he would not in his adjudication void an agreement to that effect between the parties." 1954, 122 F.Supp. 551, 554.

Lastly, Fidelity cites in support of its position Estate of Charlotte D. M. Cardeza, 5 T.C. 202, 221,[2] a case involving substantially the same factual basis as is presented here. In upholding the taxpayer's position the Tax Court there stated:

> "The regulations provide that executor's and administrator's fees are properly deductible as a part of the administration expenses under section 812(b). They further provide: 'The executor or administrator, in filing the return, may deduct his commissions in such an amount as has actually been paid * * *'
>
> "It is not denied that the fees in question have been paid, nor does the respondent advance any reason why the regulations here should not be followed."

This interpretation of the applicable regulation was the sole basis for the Tax Court's decision. We are of the opinion that such a reading of the regulation violates the plain purport of Section 812(b) (2). Indeed, Fidelity in its brief agrees with the District Court that the words " 'such an amount as has actually been paid' " must be read as modified by

---

2. Affirmed on other grounds without discussion of the issue presented by this appeal, 3 Cir.1949, 173 F.2d 19, 9 A.L.R.2d 1368.

the statutory phrase " 'as are allowed by the laws of the jurisdiction' ". Accordingly, we must reject the Tax Court's view on this point in the Cardeza case.

One contention remains to be considered. Fidelity advances for the first time, on this appeal, an alternative contention: It says the amount of $18,285.33 disallowed as a deduction for executor's commissions is an allowable deduction as a transfer for charitable uses under Section 812(d). This contention is premised upon the fact that Lankenau, which approved the 4 percent payment, is a "charity". If, contends Fidelity, the District Court is correct in assuming that Lankenau had the power to recoup the difference between the amount allowed as "fair compensation" by the Orphans' Court and the amount actually paid to Fidelity, it had by agreement with Fidelity elected to make it a grant of the disallowed amount and the disposition that a charity makes of funds bequeathed to it can have no bearing on the availability of the charitable deduction to the estate of the donor. The charity, says Fidelity, has exercised dominion over the funds to which it was entitled by directing their payment to a third party.

Whatever legal merit this course of reasoning may have we are of the opinion that its consideration is not now open to us, for Fidelity failed to set forth this basis of recovery in its claim for refund. Section 3772(a) (1), I.R.C., 26 U.S.C. § 3772(a) (1); Sec. 29.322–3 of Treasury Regulations III. Fidelity contends that it has met the requirements of Section 3772(a) (1) in that its refund claim did in fact contain a claim for an increased charitable deduction. This claim, however, was premised upon a far different theory than is now urged. Fidelity had claimed an increased charitable deduction only as an inevitable corollary of its claim for an increased deduction for executors' commissions. For if the latter deduction were granted, a smaller estate tax would result and this would produce a greater bequest to Lankenau; consequently a greater charitable deduction would be available. As to this contention we need only comment that its premise would not "enable the Commissioner of Internal Revenue to make an intelligent administrative review of the claim." Scovill Manufacturing Company v. Fitzpatrick, 2 Cir., 1954, 215 F.2d 567, 569.

For the reasons stated the judgment of the District Court will be affirmed.