ESTATE OF ELIZABETH L. AUDENRIED, DECEASED, A. ROBERT BAST, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43957. Filed April 20, 1956.

*William R. Spofford, Esq.,* and *Sherwin T. McDowell, Esq.,* for the petitioner.

*William G. Handfield, Esq.,* for the respondent.

### OPINION.

MULRONEY, *Judge:* The Commissioner determined additional estate tax due from the petitioner in the sum of $107,602.99. Robert Bast, executor of the estate of Elizabeth L. Audenried, filed the return for Federal estate tax with the then collector of internal revenue for the first district of Pennsylvania, at Philadelphia, Pennsylvania. In the return the executor took a deduction for (a) $136,737.50, being the amount of executor's commissions paid from the estate; (b) $49,593.24, being the amount of a bequest in trust for the perpetual care of decedent's family burial lot, with the right to use excess income for the improvement and beautification of the cemetery; and (c) $123,983.09, being the amount of a bequest in trust for the preservation of the books in the law library of the Philadelphia Bar Association. The Commissioner disallowed part of the first two deductions and all of the third. The three issues in the case are whether the claimed deductions were correct. The evidence with respect to the first two was all stipulated. Petitioner introduced some evidence with respect to the bequest in trust for the library, which we will later relate.

## I.

Elizabeth L. Audenried died July 18, 1948, a widow without issue, leaving a will (executed March 19, 1947) appointing A. Robert Bast as executor.

The total gross estate as shown by the estate tax return was valued at $2,748,575.68. In the return filed October 17, 1949, the executor took a deduction for $136,737.50 as executor's commissions. The stipulated facts show that on February 14, 1941, decedent delivered the following letter to A. Robert Bast:

To: A. ROBERT BAST, *Executor of my last Will and Testament*.

It is my desire and I accordingly direct that A. Robert Bast shall charge and receive compensation at the rate of 5%, despite fees ordinarily chargeable for such services.

(Signed) ELIZABETH L. AUDENRIED

FEBRUARY 14, 1941.

In the account which the executor filed in the Orphan's Court of Philadelphia County on September 30, 1952, the executor took a credit for executor's commissions in the sum of $135,387.09. Sometime prior to the filing of the executor's account the Commonwealth of Pennsylvania limited the deduction for executor's commissions to $65,000 in computing the Pennsylvania inheritance tax. There was some controversy over the executor's account in the Orphan's Court concerning the application of the Pennsylvania Proration Act and whether estate and inheritance taxes were all chargeable to the gross residuary estate. But no one challenged the executor's credit item for commissions in the sum of $135,387.09 and the record shows the executor's account with this credit therein was approved and it is also stipulated it was paid.

Respondent, in his notice of deficiency, allowed only $65,000 deduction for executor's fees, which, as noted, was the amount allowed by the Commonwealth of Pennsylvania in computing the State inheritance tax.

Section 812 (b) (2), Internal Revenue Code of 1939, allows a deduction "for administration expenses * * * as are allowed by the laws of the jurisdiction * * * under which the estate is being administered."

The Commissioner's regulation implementing the statute is Regulations 105, section 81.33, as follows:

SEC. 81.33. **Executor's commissions.**—The executor or administrator, in filing the return, may deduct his commissions in such an amount as has actually been paid, or in an amount which at the time of such filing it is reasonably expected will be paid, but no deduction may be taken if no commissions are to be collected. In case the amount of the commissions has not been fixed by decree of the proper court, the deduction will be allowed on the final audit of the return, provided: (1) That the Commissioner is reasonably satisfied that the commissions claimed will be paid; (2) that the amount entered as a deduction is within

the amount allowable by the laws of the jurisdiction wherein the estate is being administered; and (3) that it is in accordance with the usually accepted practice in said jurisdiction to allow such an amount in estates of similar size and character. * * *

Petitioner argues the above regulation provides the executor may deduct his commissions in such an amount as has actually been paid. In *Estate of Charlotte D. M. Cardeza*, 5 T. C. 202, a case involving a Pennsylvania estate and substantially the same factual basis as is presented here, we interpreted the above regulation as follows:

The regulations provide that executor's and administrator's fees are properly deductible as a part of the administration expenses under section 812 (b). They further provide: "The executor or administrator, in filing the return, may deduct his commissions in such an amount as has actually been paid * * *."

It is not denied that the fees in question have been paid, nor does the respondent advance any reason why the regulations here should not be followed. Furthermore, considering the size and nature of the estate, we are of the opinion that the fees claimed are not unreasonable in amount. Cf. *Estate of Otto Jaeger*, 16 B. T. A. 897. Accordingly, we hold that the amounts paid are deductible.

The *Cardeza* case was appealed by both parties to the Court of Appeals for the Third Circuit. On this appeal the Commissioner did not assign as error our interpretation of his regulation as allowing the deduction of executor's fees in an amount "actually paid." The decision in the *Cardeza* case was affirmed without mention of the above portion of our conclusion. *Commissioner* v. *Cardeza's Estate*, 173 F. 2d 19.

In *Fidelity-Philadelphia Trust Co.* v. *United States*, 222 F. 2d 379, it was stated the sole basis for our conclusion in the *Cardeza* case was that the regulation previously quoted allows the deduction for the amount of executor's commissions actually paid. The court rejected such an interpretation and goes on to hold the words "such an amount as has actually been paid" contained in the regulation must be read as modified by the statutory phrase "as are allowed by the laws of the jurisdiction." We will accept the rule of the *Fidelity* case, which rule, under the statute and regulation we perceive to be that the Commissioner should allow as a deduction the executor's fee allowed by the laws of the jurisdiction, in an amount which has actually been paid.

Applying the foregoing rule to the facts of this case, we feel petitioner made out a prima facie case. It is stipulated the executor's commissions in the amount of $135,387.09 were set forth in the executor's accounts. The stipulation reads: "The Orphan's Court of Philadelphia County, in its adjudication of the executor's account, allowed a credit for the full amount of the executor's commissions of $135,387.09 claimed in said account." It is also stipulated the executor's commissions "in the amount of $135,387.09" were paid by the petitioner estate. There is nothing in the stipulation or evidence in

the case showing the Orphan's Court approved any other amount for executor's commissions. In Pennsylvania there is no statute fixing the amount of executor's commissions. The law evidently is that it shall be fixed by the Orphan's Court and it seems to take the form of approval or disapproval by that court of the amount of executor's fees shown in the executor's account filed with the court. In the cases where there has been some contest over the allowance by the Orphan's Court, and an appeal from its findings, the decisions indicate the allowance should conform to a standard of fair compensation in accordance with the responsibility incurred and the work and services performed, with every case to be decided on its own special facts. *In re Gardner's Estate*, 323 Pa. 229, 185 Atl. 804; *In re Harrison's Estate*, 217 Pa. 207, 66 Atl. 354; *In re Young's Estate*, 202 Pa. 32, 53 Atl. 511. In the absence of any controversy over the executor's commissions as approved by the Orphan's Court, we must assume the court-approved amount of executor's commissions is the total commission allowed by the laws of Pennsylvania. Under the record here it is stipulated the executor's account was *adjudicated* by the Orphan's Court and the court *allowed* credit for the full amount of $135,387.09.

We do not know how the figure of $65,000, the amount allowed as a deduction for Pennsylvania inheritance tax, was reached. The stipulation merely states, "The Commonwealth of Pennsylvania limited the allowance for the deduction for executor's commissions to $65,000 in computing Pennsylvania Inheritance Tax prior to the filing of the executor's account." There is no showing that this $65,000 was allowed by the Orphan's Court as the allowable commission under the law of Pennsylvania or that the Orphan's Court had anything to do with *limiting* the allowance to $65,000 for the purpose of *computing* the State tax. It may be a figure that the petitioner agreed to or submitted to for the purpose of satisfying the State tax obligation. The Commissioner cannot fasten on this figure as the commission "allowed by the law of the jurisdiction." It appears to be a limitation of the amount, actually allowed, which the State taxing authorities would accept for computation of State tax.

The case is distinguishable from the holding in *Fidelity-Philadelphia Trust Co.* v. *United States, supra*. There the executors' account in the Orphan's Court took credit for $79,366.31 executors' fees paid, and the Commissioner allowed as a deduction $61,080.98, the amount allowed as a deduction for Pennsylvania State inheritance tax. But there the executors' fee as shown by the account was opposed by the Commonwealth in the Orphan's Court. The opinion upholds the Commissioner but not on the ground that the Commissioner had the right merely to accept the State taxing authority's figure as the fee allowed by the law of the jurisdiction. The opinion

analyzes the adjudication of the Orphan's Court and concludes that the Orphan's Court merely allowed the $79,366.31 to "stand" as between the executor and residuary legatee but did not approve it as a proper allowance under the Pennsylvania law. The opinion in the *Fidelity* case quotes with approval this language of Judge Clary of the Eastern District of Pennsylvania:

A reading of the adjudication [of the Orphan's Court] * * * shows clearly that the court in permitting the total executors' commission to "stand" as a deduction for accounting purposes expressly decided that the higher sum was not one "allowed by the laws of Pennsylvania", under the Pennsylvania standard of "fair compensation". * * *

The opinion in the *Fidelity* case does not state the amount allowed by the State taxing authorities is to be considered the amount allowed by the laws of the jurisdiction. It points out this amount was under the facts of that case held by the Orphan's Court also to be "a proper 'allowance,' * * * by resorting to the criteria employed by the Pennsylvania courts in determining 'allowability'. "

With the stipulated record in the instant case of allowance by the Orphan's Court of $135,387.09 as executor's commissions, that amount became the amount allowed by the law of the jurisdiction, within the statute, and, with the stipulated record of payment, it became the amount that has actually been paid within the regulation. We hold petitioner is entitled to a deduction of $135,387.09 for executor's commissions in computing the Federal estate tax.

## II.

The sixth clause of the will bequeathed the residue of the estate to the pecuniary legatees "in the same proportions as their original legacies bear to all money bequests hereunder." The fifth clause gave $10,000 to the Germantown Trust Company, in trust, to keep it invested and to apply the net income therefrom "for the perpetual care, including repairs and straightening of tombstones, of the Benjamin Lehman lot in the old part of the cemetery of the Church of the Brethren in Germantown or any other cemetery to which the bodies now interred in said lot may be removed, with the right to use excess income for the improvement and beautification of said cemetery." By the application of clause 6, the foregoing bequest of $10,000 became a bequest totaling $49,593.24. In the estate tax return petitioner took a deduction for the full sum of $49,593.24 as funeral expenses. Respondent determined the amount necessary for the ordinary and necessary maintenance of the cemetery lot to be $2,500, and accordingly, disallowed the deduction as to the excess.

The parties agree a bequest for the perpetual care of a burial lot, in a reasonable amount, is deductible as a funeral expense under sec-

tion 812 (b) of the 1939 Internal Revenue Code. There is no evidence here the $2,500 allowance by the Commissioner was unreasonable. The petitioner argues: "[T]o the extent the bequest to the Germantown Trust Company, in trust, is not deductible as a funeral expense, it is deductible as a bequest for religious purposes under section 812 (d) of the Internal Revenue Code of 1939."

Section 812 (d) provides, in part, as follows:

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers * * * to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, or to a trustee or trustees, * * * to be used by such trustee * * * exclusively for religious, charitable, scientific, literary, or educational purposes. * * *

The only question for decision on this issue of the case is whether a bequest in trust to maintain or beautify a cemetery is a religious or charitable bequest under section 812 (d), *supra*. Respondent cites authority that such bequests as applied to cemetery associations are not considered charitable contributions. *Gund's Estate* v. *Commissioner*, 113 F. 2d 61, certiorari denied 311 U. S. 696.

But here it was stipulated the cemetery is owned and operated by the Germantown Church of the Brethren, "a religious corporation, operated exclusively for religious purposes, * * * [and] the cemetery, which is operated by the church as a church burial ground, adjoins the church." It is apparent the church, in whose behalf the bequest will be used, is a corporation "operated exclusively for religious * * * purposes" within the provisions of section 812 (d), *supra*. The authorities agree that a trust for the upkeep of a cemetery attached to a church is a trust for a religious purpose. Restatement, Trusts sec. 371; 3 Scott, Trusts sec. 371.1; *In re Close's Estate*, 260 Pa. 269.

Since the parties agree the church is operated exclusively for religious purposes and part of its activity is the operation of the cemetery that it owns, then that portion of the bequest to a trustee for the maintenance of the cemetery is *to be used* for religious purposes within the meaning of section 812 (d), *supra*.

Respondent devotes a few lines of his brief to a statement that clause 5 would allow the proceeds to be applied to the upkeep of any other burial lot to which the bodies of decedent and her family might be removed, even if the remains were removed to a commercial cemetery. But the cost of maintaining the burial plot is deductible as a funeral expense regardless of its location. We are here dealing with the excess funds. They are to be used for the improvement and beautification of "said cemetery." It seems that "said cemetery"

should refer to the cemetery of the Church of the Brethren named in the clause. At any rate, the possibility that the bodies might some day be removed to a commercial cemetery, and the possibility that some court would interpret the will as allowing the excess funds to be appropriated for the improvement and beautification of such commercial cemetery is too remote on which to base disallowance of the excess as deductible under section 812 (d), *supra*.

It is clear that the decedent's intent is a trust use of the excess funds for the improvement and beautification of the Church of the Brethren cemetery where the family lot is now located. That this is a religious use is sufficient to warrant the deduction under section 812 (d), *supra*. We hold the entire amount of the bequest under clause 5 is deductible; partly under section 812 (b) (1), Internal Revenue Code of 1939, as funeral expenses, and the remainder under section 812 (d), *supra*.

### *III.*

In the fifth clause of the will decedent also made a specific bequest of $25,000 to "the Philadelphia Bar Association, In Trust, to keep it invested and to apply the net income therefrom toward the preservation of books in its law library, said fund to be known as the 'Charles Y. Audenried Fund' in memory of my husband." By the operation of clause 6 this bequest was enlarged to $123,983.09. Petitioner took a deduction for the entire amount of the bequest which deduction was disallowed by the Commissioner in its entirety.

Respondent's argument treats this bequest as a bequest to the Philadelphia Bar Association. It starts with the statement: "Since the law library is an integral part of the Bar Association, it does not constitute a trustee and beneficiary relationship." No authority is cited for this proposition and we know of none. The bequest is to the Philadelphia Bar Association, in trust, for the purposes set forth in the will, namely, to the preservation of books in its law library. Such cases as *Alfred A. Cook*, 30 B. T. A. 292, and *George O. May*, 1 B. T. A. 1220, where we held the Bar Association of the City of New York and the American Institute of Accountants were not shown to be corporations organized and operated exclusively for educational purposes, under other taxing statutes, are not in point. This bequest is deductible if it is made, in the words of section 812 (d) " * * * to a trustee * * * to be used by such trustee * * * exclusively for * * * literary, or educational purposes, * * *." The status of the Bar Association itself is immaterial. If the library it conducts serves a literary or educational purpose in the community, then surely the preservation of the books in the library contributes to that function. So the inquiry here is whether the library serves a literary or educational purpose.

Respondent points to the evidence consisting of the Association's "Rules for the Governance of the Library of the Philadelphia Bar Association." They are too long to set forth but in general the rules provide the use of the library shall be confined to all State and Federal judges, the Federal district attorney and his assistants, all attorneys representing the city, members of the association and Junior Bar Association, whose dues are paid, other members of the bar on payment of $20 a year when such privilege is granted by the board of governors, and "Non-legal scholars upon approval of their applications by the Library Committee." Earlier rules which seem never to have been changed, allowed use. of the library to students at law and members of the bar outside of Philadelphia when in the city on legal business and "Such other persons as by special permission of the Board or of the Librarian shall be allowed the privilege for a certain time."

The limitations on the use of the library appear to be reasonable. The exclusion of those members of the Association who did not pay their dues or those members of the Bar who do not pay $20, is reasonable. The rules make the use *available* to all the lawyers. It is not necessary that the use be made free to all. Such rules do not affect the educational or literary purpose of the library. They are similar to the rules requiring tuition payment by other educational institutions.

It is true that lawyers would receive direct benefits in their practice by using the library but the record shows the library contained many volumes, some written in Latin on the Roman law and the later Continental law, of interest to scholars and for research purposes. It contains the John Marshall Gest Collection of books, which collection contains the 15th and 16th Century Canons of Law and scholars and clergymen make much use of the library.

A very similar case is *United States* v. *Proprietors of Social Law Library*, 102 F. 2d 481. There the facilities of the library were open to all who became proprietors or subscribers, by payment of a fee, and free of charge to certain State and Federal officials. It had been operating continuously since 1814 and had been housed in the Suffolk County courthouse free of rent and expense and partly supported by county funds. The court held the library was an educational institution under section 101 (6), Revenue Act of 1934. In the course of the opinion the court said:

Surely a law library of the size and type of the Social Law Library of Boston, serving as it does a large body of lawyers and state and federal officials, measures up to the conditions required of an exempt institution under Sec. 101 (6) supra. Its contents are not strictly confined to law books as authorities on questions of law, but it contains over 8,000 biographical, encyclopedic, and historical works and books dealing with the entertaining aspects of the law.

That its users are confined to those interested in legal, governmental or historical subjects and to those contributing to its support does not take away its right to exemption under Sec. 101 (6). * * *

The rules provide the librarian or board could allow anyone to use the library. The testimony by those in authority shows conclusively that this has been given a broad interpretation and application and the library has been so run that any member of the public could obtain the use of the facilities of the library simply by requesting permission from the librarian.

The public nature of the library is further shown by the fact that it is located in the city hall of Philadelphia. It pays no rent and the city of Philadelphia contributed approximately $50,000 toward the cost of outfitting the library. The State legislature has appropriated funds (totaling $30,326.50 for the 5-year period preceding decedent's death) for the use of the law library.

We are of the opinion that the operation of the law library measures up to a literary or educational function and the use of the trust fund to preserve its books will contribute to that function and is therefore within the deduction granted by section 812 (d), *supra*, as being a grant to a trustee to be used exclusively for literary or educational purposes. The claimed deduction will be allowed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

WITHEY, *J.*, dissents.