WOLFE, P. J.,
This matter comes before the court on motion of the Warren National Bank, Administrator of the Estate of Montana O. Knupp, for a distribution hearing. The administrator’s account was confirmed nisi on February 1, 1971, and absolute on March 3, 1971, as no exceptions were filed.
Decedent died intestate, leaving three sisters as her heirs at law, and during the course of administration one heir, Adele Ferguson, died, leaving as her sole beneficiary her sister, Mrs. Lady Bayonne Borchert. Consequently, by this turn of events, two sisters of the deceased share in the estate, to wit, Lady Bayonne Borcliert and Miss Celeste M. Knupp.
The heirs were notified that the purpose of the distribution hearing was to seek court approval of an additional $10,000 commission for the administrator and an additional $6,000 for attorney fees.
At the date set for hearing, certified receipts of service by registered mail were placed in evidence of the notice of the distribution hearing, as well as a letter from the Estate of Adele Ferguson acknowledging notice of the hearing.
The administrator appeared through its vice president and trust officer, Mr. Gerald Huber, who testified the administrator had heretofore received $15,000 for its services and was seeking an additional $10,000.
The firm of Hampson & Hampson, of Warren, Warren County, Pa., and the attorneys for decedent, who had her domicile in Warren County, acknowledged a prior payment of $15,000 fee to the original attorney for the administrator, Myer Kornreich, Esq., who during the course of the administration died, and from which sum the firm of Hampson & Hampson received $4,000, two-thirds of which was retained by Hampson *648 & Hampson and the balance was paid to Ronald Mottl, Esq., attorney for Mrs. Borchert as the referring attorney. The $11,000 was retained by the estate of Mr. Kornreich.
Subsequent to the notice to the beneficiaries, protest for additional payment of attorney fees was made by Miss Celeste Knupp, but neither the heirs nor the executor of the Estate of Adele Ferguson made any objection to the request of the administrator for additional commission.
A review of the protest letters filed with the register of wills was made by the court inasmuch as none of the heirs or their attorneys appeared at the hearing. These letters revealed generally the two heirs were of the opinion the attorney for the administrator had received sufficient compensation.
The account as filed indicates an inventory of $289,520.13. The first and final account consists of 35 pages and corroborates the testimony of Mr. Huber that the estate was extremely complicated, consisting of 200 different parcels of land and oil, gas and mineral rights in four counties and 20 townships, most of which were held by decedent through tax sales and were particularly difficult to administrate and liquidate. The record shows decedent died on April 2, 1964, and a period of seven years was necessary to liquidate and litigate the estate.
A major problem confronting the administration of the estate was a purported holographic will that was submitted to probate, which, if probated, would have distributed the estate in part to others than the intestate heirs. On November 17, 1965, the register refused to probate the writing and on March 6, 1967, the appeal to the orphans’ court confirmed the register’s decision. It was at this point Mr. Kornreich died and the firm of Hampson & Hampson was required to continue with the litigation, which found its way to *649 the Supreme Court of Pennsylvania, and the case is there recorded as Knupp Will, 428 Pa. 409 (1967).
The holding of this case sustained the orphans’ court which devolved the estate to the intestate heirs.
No fees or commissions were agreed upon at the outset and no agreement was made between the administrator and the heirs nor with the attorney and the heirs concerning fees and commissions during the course óf administration.
If the current request is granted, the administrator would receive $25,000 commission and the firm of Hampson & Hampson would receive an additional $6,000 for a total of $10,000 .
There can be no doubt that by reason of the demise of Mr. Kornreich the attorney fees have necessarily been increased. Had he continued to live and acted as the attorney throughout the administration of the estate the expenses may not have been increased. However, for the purpose of this request for additional fees, this court is compelled to consider the services rendered by the administrator and the firm of Hampson & Hampson from the point of time they commenced their services.
It is well settled that those who serve in a fiduciary capacity are entitled to be paid fair compensation for the value of their services, and this value is to be determined by the court under the circumstances of the particular case, including the amount, kind and relative complexity of the work entailed in the administration of the estate: Fidelity-Philadelphia Trust Company v. U. S., 222 F. 2d 379. A fiduciary’s compensation depends on the extent and the character of the labor and the responsibility involved: Faust’s Estate, 364 Pa. 529. The test to be applied in determining the amount of the compensation is the actual worth of the services: Freeman Estate, 1 D. & C. 2d, 178.
*650 A review of this account leaves no doubt that the administrator was required to perform extraordinary services not generally performed in the average estate. It would be grossly unfair to the administrator to pay it $15,000 as its total compensation, and in light of lack of objections by the heirs apparently they were of the same conclusion. As stated, this administration continued for a period of seven years, involving the rendition of services far beyond those required in the average estate. Consequently, the court finds the request of the administrator for additional fees in the amount of $10,000 is commensurate with its services rendered.
Considering now the request for additional attorney fees, the court is compelled to consider the amount and character of the services rendered, the labor, the time and the trouble involved, the character and importance of the litigation, the amount of money or value of the property affected, the professional skill and experience called for, and the standing of the attorney in his profession, to which may be added the general ability of the client to pay and the pecuniary benefit derived from the services: Huffman Estate (No. 3), 349 Pa. 59.
In the current case, the firm of Hampson & Hampson was required to take over after the original attorney’s death and from that point on litigated the estate through the orphans’ court and a successful appeal to the Supreme Court, the result of which was to the sole benefit of the heirs.
The firm of Hampson & Hampson is a competent firm and have served their client in this case efficiently and successfully. They did far more than settle an estate of a decedent. Moreover, the administrator had no objections to the additional attorney fee.
In a case of this nature, it would be impossible to fix the attorney fees at the outset. Neither the attorney *651 nor the heirs could foresee the litigation that developed. To now hold the attorney to the $4,000 paid him would be unconscionable in light of the services rendered.
This court is of the opinion that the commission of the administrator and that of the firm of Hampson & Hampson is commensurate with the size of the estate, the work performed and the value of the services to the heirs and therefore makes the following
DECREE
And now, March 31, 1971, it appearing that the first and final account of Warren National Bank, Administrator of the Estate of Montana O. Knupp, received final approval on March 3, 1971, and it further appearing that all parties in interest having been given notice of the distribution hearing in accordance with the law, and in further consideration of the testimony produced at said distribution hearing, it is ordered and decreed that the administrator shall distribute the remaining assets in its hands on the basis of a one-third share therein to each of decedent’s sisters in accordance with the intestate law of Pennsylvania, Intestate Act of 1947, P.L. 80, sec. 3(3), 20 PS § 1.3(3), and that said distribution shall be made in accordance with the attached schedule, allowing the requested fees.