William E. McClusky, J.
Four motions are presented here, two to review assessments under article 13 of the Tax Law of this State and two motions to dismiss the petition in each proceeding for failure to state sufficient facts.
*245 Located in the Towns of Manlius and Dewitt in the County of Onondaga are parcels of land south of Route 5 and continuing southerly across a road known at the Highbridge Road. It is a golf course known as “ The Lyndon Golf Course.” It was and is a course open to the use of the public generally for a price. This course and the several buildings appurtenant thereto were the property of Ernest I. White, a well-known lawyer, sportsman and philanthropist. He died and left a will which was admitted to probate by the Surrogate of Onondaga County in 1958. By the second paragraph of his will and a codicil he named the Merchants National Bank & Trust Company as trustee of a trust designated therein as a ‘1 charitable trust”. The paragraph as amended by a codicil is as follows:
Second : There is perhaps no better thing I can do out of appreciation of the kindly community in which I have lived than to dedicate a portion of my property in the Towns of Dewitt and Manlius, Onondaga County, to the people of that section and of Syracuse for their pleasure and health. Especially do I wish to encourage games, that the coming generation may learn that the observance of and adherence to the rules of the game is more important than winning. It may be that from time to time the rules should be changed, but let us strive to perfect ourselves so that we may hope to win under the rules as they exist and not to liberalize or interpret them to please our momentary whim. Not alone health, but the attributes of fine character, namely, patience, self-control, resolution and integrity should be developed in the game of golf. With these thoughts in mind and for the purpose of establishing an area which shall be devoted to and used for public recreational purposes and for the further purpose of benefiting Syracuse University, I give, devise and bequeath to my trustee hereinafter named, its successor or successors, the following described real property:
Parcel 1. All that tract or parcel op land with the buildings thereon being part of Lot 73, Town of Dewitt and Lot 74, Town of Manlius, in the County of Onondaga, State of New York, bounded and described as follows:
Beginning at the northeast corner of Lot 73 Town of Dewitt and running thence North 83° 52' 30" W. along the north line of said Lot 73 1331.2 ft.; thence S. 6° 02' 50" W. 212.91 ft.; thence N. 85° 39' W. 37.59 ft.; thence 6° 02' W. 361.26 ft.; thence N. 79° 29' 30" W. 55.15 ft. to the northerly line of Highbridge Rd. as widened; thence along the northerly line of Highbridge Rd. as widened on the following courses and distances, S. 50° 30' 25" E. 943.85 ft., S. 52° 31' 45" E. 549.54 ft., S. 48° 13' 47" E. 631.51 ft. and S. 50° 33' 10" E. 355.10 ft.; thence N. 6° 39' 30" E. 1127.35 ft.; thence N. 83° 16' 30" W. 556.40 ft.; thence N. 6° 22' 40" E. 780.78 ft. to the south line of the Syraeuse-Fayetteville Plank Rd. now E. Genesee St.; thence N. 83° 52' 30" W. along the south line of E. Genesee St. 104.63 ft. to the west line of Lot 74 Town of Manlius; thence N. 6° 13' 20" E. 24.42 ft. to the place of beginning.
* • *
I also grant to the trustee all machinery, such as tractors, mowing machines, tools and equipment of every kind and description used in the maintenance and operation of the golf course now on said property. This grant is made in trust nevertheless for the following uses and purposes:
*246 Said property is to be held and administered by the trustee as a charitable trust. It is my intention that the property shall be maintained and operated as a golf course under the ‘ Pay-As-You-Play ’ system as heretofore and for such other public recreational facilities as my trustee may deem proper and advisable. It may be that in the years to come changing times and conditions may bring about new needs for public recreation and means of developing the physical and mental attributes to which I have alluded and which I deem to be essential. These changes my trustee will be in a position to know as they develop and is fully authorized and empowered to make changes in the form of recreational activities to which the property shall be devoted. The determination of such questions together with all other matters in connection with the management and operation of the property shall be in the sole discretion of my trustee. It is my further intention that the property shall be operated upon a revenue producing basis and that such fees or other charges for golf and other recreational activities and for the use of the other facilities, included in the grant shall be charged as may be necessary to maintain and operate the property and produce some net revenue therefrom.
I direct that the net income of said trust shall be paid to Syracuse University to be devoted by them to the use of the College of Law in such manner and for such purposes as the Chancellor of the University and the Dean of the Law College shall determine will best promote the interest of that College. In making this provision it is my desire to recognize the outstanding position that that College holds in the field of legal education.
The course mentioned had been operated during the testator’s lifetime as a profitable business undertaking. It was public only-in the sense that all the public generally were invited to use the facilities for a fee but never was it operated without fee or charge. In somewhat the same sense a shopping center is free inasmuch as the public without discrimination is invited and may visit it but certainly the products are not free. Neither was this golf course.
The defendant boards of assessors assessed the premises upon their tax rolls for the year 1958; Manlius for $7,100 and Dewitt for $39,100. During the grievance periods objections were interposed not to the assessment but to the failure to exempt the premises. Both boards overruled the objections, holding that the premises in question were taxable and not exempt. The proceedings followed. The petitioner claims that the terminology of the will brings the grant within subdivision 6 of section 4 of the Tax Law as a grant for educational purposes and as a public playground.
The latter paragraph of this testamentary trust direct that the net income from the trust (i.e. the operation of the golf course) shall be paid to Syracuse University to be devoted by 1 ‘ them ’ ’ to the use of the College of Law. One of the claims for the exemption is that the net income is to be paid to the university, which is an exempt educational institution.
*247 It is a fundamental rule of law with reference to exemptions from taxation that the right to exemption must be clear and unambiguous. If there is any doubt relative to the exemption, that doubt must be resolved in favor of the taxing authority. (People v. Brooklyn Garden Apts., 283 N. Y. 373; People ex rel. Andrews v. Cameron, 140 App. Div. 76, affd. 200 N. Y. 585; People ex rel. United Cong. Soc. of N. Y. v. Mills, 189 Misc. 774.)
Two conditions must be met by the petitioner to come within the exemption of subdivision 6 of section 4 of the Tax Law, viz.: it must own the property and secondly it must establish that the property is used exclusively for carrying out the purposes that come within the exemption provisions of the statute. (People ex rel. Cornell Univ. v. Thorne, 184 Misc. 630.)
In the instant case, it is clear that the title is vested in the petitioner as trustee and is not vested in Syracuse University. The first condition cannot be met.
The provisions of the will contain some factual statements which give the tone to this application. From the will it is clear that the premises in question were operated during the testator’s lifetime as a “ Pay-As-You-Play ” golf course. It was an unusually successful project. After a somewhat lengthy dissertation on sportmanship, the testator stated “ It is my further intention that the property shall be operated upon a revenue producing basis and that such fees or other charges for golf and other recreational activities and for the use of the other facilities included in the grant shall be charged as may be-necessary to maintain and operate the property and produce some net revenue therefrom ”. (Italics supplied.) It is perfectly obvious from this direction that even if this property were owned by the university it could not be exempt because rents, income and profit are derived from its use and is not “ used exclusively for carrying out thereupon one or more of such purposes ’ ’ (Tax Law, § 4, subd. 6).
It is claimed that the trust is a “ charitable trust ” and is, therefore exempt. The language employed is “ Said property is to be held and administered by the trustee as a charitable trust ’ ’. The distinction is between that and a private trust. That distinction brings the trust within the purview of section 12 of the Personal Property Law and saves it from the' ban against perpetuities. (Matter of MacDowell, 217 N. Y. 454.)
It does not in and of itself create a tax exemption. To secure that there must be compliance with the Tax Law. One must examine the language of the codicil itself. Clearly the trustee is directed to operate the course as it had been before and to *248 charge a fee for the use of the facilities and to charge a large enough fee to produce a net income. That direction brings the trust under the ban of paragraphs (c) and (d) of subdivision 6 of section 4 of the Tax Law.
There is another claim for exemption made, which upon the argument of the motion was pressed more strongly than the other claim. It is urged that the trust is one which creates a public playground and is exempt under paragraph (f) of subdivision 6 of section 4 of the Tax Law. That section provides that property held by trustees named in a will or deed of trust or appointed by the Supreme Court of the State of New York for hospital, public playground and library purposes, as set forth in this subdivision, shall be exempt to the same extent and subject to the same conditions and exceptions as if held by a corporation. Trustees are thus in the same position as religious and educational corporations.
Various, indeed, are the definitions of a park or public playground. A fairly accurate definition is that given in Perrin v. New York Cent. B. B. Co. (36 N. Y. 120,124) wherein it is stated that a park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment. Of course, the mere fact that fees are charged does not in and of itself defeat an exemption claim. (People ex rel. Doctors Hosp. v. Sexton, 267 App. Div. 736, affd. 295 N. Y. 553.)
All of the surrounding circumstances must be considered. Here was a tract of land operated as a business. To the moment of Mr. White’s death it was taxable. The trust created was one to continue the operation of the profitable business and to pay the net income to an exempt educational corporation. Paragraph (f) of subdivision 6 of section 4 places the trustee in the same position and subject to the same limitations as a corporation. Had Syracuse University been the devisee itself for the same purposes, the land would not be exempt under paragraph (a) of subdivision 6 of section 4. The claim that the property is a public playground is farfetched. There is nothing public about this golf course except that there is no discrimination made as to the users thereof. The only condition,.so far as the record goes, is the need to pay the “ green ” fee. The cold fact is that this is a lucrative business, owned and operated by a trustee under a compulsory testamentary devise to earn a net income to pay to an educational institution. That does not either factually or constructively warrant the claims made for an exemption as a public playground. It does not comply with any of the provisions of the General Municipal Law (§§ 140, 141, 144). The Untermyer case is clearly distinguishable from the *249 case at bar. (Cf. People ex rel. Untermyer v. McGregor, 295 N. Y. 237.)
The court has preferred to deal with the merits of the petitions. Accordingly the motions to dismiss the petitions for insufficiency become academic.
The petitions are dismissed, with $25 costs in each proceeding awarded to the respondents.
Prepare orders accordingly.