ESTATE OF WILLIS D. WOOD, DECEASED, LAWRENCE A. BAKER, ET AL., EXECUTORS, AND ANNA M. WOOD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87550. Filed October 1, 1962.

*Lawrence A. Baker, Esq.*, for the petitioners.
*Hyman Maron, Esq.*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency in petitioners' income tax for the taxable year 1957 of $12,872.16. The parties have reached agreement on several issues regarding the deficiency. The remaining issues presented for decision are: (1) Whether the value of shares of stock transferred to a church pursuant to a trust agreement providing for perpetual care of the transferor's plot in the church cemetery is deductible as a charitable contribution; and (2) whether, if it does not constitute a charitable contribution, the foregoing transaction resulted in taxable capital gain to the transferor.

#### FINDINGS OF FACT.

The case was submitted upon a complete stipulation of all the facts which we find accordingly. The exhibits attached to the stipulation are incorporated by reference.

Petitioners are Anna M. Wood, individually (widow of Willis D. Wood), and the duly qualified executors of the estate of Willis D. Wood, who died May 6, 1957. Petitioners filed a joint income tax return for taxable year 1957 with the district director of internal revenue for Lower Manhattan, New York City, New York. The return included the income of decedent, Willis D. Wood, for the period January 1 to May 6, 1957, and the income of Anna M. Wood (hereinafter referred to as Anna Wood) for the full year of 1957.

1

During 1957, Anna Wood transferred shares of capital stock of Allied Chemical & Dye Corporation having a value of $7,837.50 to "The Rector, Church Wardens and Vestrymen of St. John's Church, Cold Spring, New York" (hereinafter referred to as the church). The deed of trust executed by Anna Wood, dated December 5, 1957, provided that the church was:

to have and to hold the same, or the proceeds thereof, to itself, its successors and assigns, upon trust for the following purposes, to wit:

* * * to receive and collect the income therefrom and apply the same toward keeping in proper order and repair the plot of land in the Memorial Cemetery belonging to such Church, standing in the name of Anna Matheson Wood on the books of the Memorial Cemetery * * *

On December 14, 1957, the church acknowledged receipt of the stock and agreed "to hold the same or the proceeds thereof upon trust for the purposes aforesaid."

The value of the shares of stock transferred to the church was deducted as a charitable contribution on petitioners' joint income tax return for 1957.

The cemetery lot referred to was purchased by Anna Wood's father who died in 1930, leaving surviving three children, Anna and two sons, Malcolm and Hugh. By indenture, Malcom and his wife and the widow and surviving children of Hugh released and quitclaimed to Anna Wood all rights in the lot. The indenture was recorded on March 19, 1954, and from that time all rights in the lot have been in and have been exercised by Anna Wood.

The church was incorporated in 1835 under an Act of the State of New York providing for the incorporation of religious societies. This Act was amended in 1842 and 1850 to enable religious corporations to acquire and hold land for the purpose of a burial ground or cemetery. By indentures dated November 29, 1862, November 9, 1878, and October 9, 1896, the church acquired the land now known as the Memorial Cemetery for use as a cemetery.

The church qualifies as a religious organization within the meaning of section 170(c) of the Internal Revenue Code of 1954.

Anna Wood's basis for gain or loss on the shares of Allied Chemical & Dye Corporation common stock delivered to the church was $946, the same as the basis of her late father from whom she acquired the stock by gift.

A special ruling dated March 15, 1955, issued by the Commissioner to the American Cemetery Association, held:

contributions made to the general fund of the cemetery company or corporation which benefits all lot owners, as well as contributions made to the cemetery company or corporation for the care or upkeep of a particular lot may be deducted

by the donor under the provisions of section 170 of the Code of 1954, if the cemetery company or corporation qualifies as an organization referred to in section 170(c)(5) of the Code of 1954.

A special ruling dated October 20, 1955, issued by the Commissioner, held:

Payments made to * * * [a cemetery company] by a lot owner for the purpose of providing perpetual or seasonal care of his lot, and that part of the purchase price of a lot which is paid into the Permanent Care Fund or Current Maintenance Fund, which funds are irrevocably dedicated to the perpetual or seasonal care of a particular lot, or for the upkeep of the entire cemetery, * * * are deductible by the donors in computing their taxable income in the manner and to the extent provided by section 170 of the 1954 Code.

Based on the foregoing rulings and prior to the transfer of the shares of stock to the church, counsel for Anna Wood advised her that in his opinion the value of property so transferred would be deductible on her income tax return and that no capital gains tax was imposable on the difference between her basis and the value of the property at time of transfer.

OPINION.

Petitioners deducted the value of stock transferred by Anna Wood to the church as a charitable contribution or gift under section 170 of the Internal Revenue Code of 1954.[1]   In claiming this deduction on their income tax return for 1957, petitioners apparently relied upon the special rulings issued by the Commissioner to other parties on March 15 and October 20, 1955, approving the deduction of "charitable contributions" for the perpetual care of particular cemetery plots.   Petitioners here contend that those rulings correctly stated the law.

---

[1] SEC. 170.   CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.
    (a) ALLOWANCE OF DEDUCTION.—
        (1) GENERAL RULE.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.
    *          *          *          *          *          *          *
    (c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—
    *          *          *          *          *          *          *
        (2) A corporation, trust, or community chest, fund, or foundation—
    *          *          *          *          *          *          *
            (B) organized and operated exclusively for religious, charitable * * * purposes * * *
    *          *          *          *          *          *          *
        (5) A cemetery company owned and operated exclusively for the benefit of its members, or any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, if such company or corporation is not operated for profit and no part of the net earnings of such company or corporation inures to the benefit of any private shareholder or individual.

4

The Commissioner has disallowed the claimed deduction on the ground that petitioners received full consideration in exchange for the transfer. Therefore, the Commissioner argues, the transaction was a personal or family expense, which is not deductible,[2] rather than a charitable contribution. The Commissioner thus asserts the position taken in Rev. Rul. 58–190, 1958–1 C.B. 15, which was promulgated subsequent to the issuance of the special rulings and subsequent to the time that petitioners claimed the deduction on their income tax return for 1957. The ruling states, in part (p. 18):

contributions *voluntarily* made to or for the use of a nonprofit cemetery company or corporation, the funds of which are irrevocably dedicated to the care of the cemetery as a whole, are deductible by the donors as charitable contributions in the manner and to the extent provided by section 170(c)(5) of the Internal Revenue Code of 1954. However, a donor may not deduct a contribution made for the perpetual care of a particular lot or crypt. * * *

Under the terms of the trust instrument by which the securities were transferred to the church, all of the income realized from the corpus is to be expended for perpetual care of the particular cemetery plot belonging to Anna Wood. The church is bound to render a service, which can be measured in economic terms, in exchange for the securities. The sole objective sought by Anna Wood by the terms of the trust was the application of that service to the plot which she now holds and which will eventually be held by her heirs or devisees.[3]

Petitioners argue that Anna Wood was under no legal obligation to make any payment and state on brief that the church was already bound to maintain the cemetery as a whole. The voluntariness of a payment does not automatically render it a gift or contribution, *Commissioner* v. *Duberstein*, 363 U.S. 278 (1960). Regardless of any pre-existing duty on the part of the church to keep up the cemetery, the transfer in trust provides insurance that care will be forthcoming and, perhaps, provides for better care than might otherwise have been given. These are matters of substantial economic value, as well as personal satisfaction, to Anna Wood.

Although petitioners contend that the transfer was for the benefit of the church and its cemetery as a whole in that funds normally used to maintain Anna Wood's lot were available to spend for care of other lots, we believe that the dominant consideration in creating the trust was to benefit the plot held by Anna Wood. The trust instrument makes no provision for expending any part of the income on the care of other plots or the cemetery as a whole.

---

[2] Sec. 262, I.R.C. 1954.

[3] Under the Religious Corporations Law of New York State (art. 2, sec. 8), Anna Wood was required to hold the plot indivisible and upon her death it must descend to her heirs or devisees subject to numerous restrictions.

The trust carries the right to have the corpus held and the income applied solely to the perpetual care of Anna Wood's burial plot. The Personal Property Law of the State of New York imposes a duty upon the attorney general to enforce such trusts.[4]

We are convinced that under the circumstances before us, the trust was established for personal, private purposes and in exchange for a valuable consideration, i.e., perpetual care of the particular cemetery plot belonging to Anna Wood. We do not believe that Congress intended "charitable contributions and gifts" to include a payment made by a taxpayer in consideration of a service to be rendered to the taxpayer by a charity. The weight of authority supports us in this view.

In *Channing* v. *United States*, 4 F. Supp. 33 (D. Mass. 1933), affirmed per curiam 67 F. 2d 986 (C.A. 1, 1933), certiorari denied 291 U.S. 686 (1934), the taxpayer was denied deduction for tuition for her children paid to three nonprofit educational organizations. She had argued that payment of tuition was a charitable contribution under section 23(n)(2) of the Revenue Act of 1928 which provided for the deduction of contributions or gifts made to or for the use of any nonprofit corporation operated exclusively for educational purposes. The District Court stated, 4 F. Supp. at 34, 35:

Nevertheless, as a legal proposition, I cannot believe that Congress ever intended to give to the act an interpretation wide enough to admit payments made by a taxpayer as a price for a service rendered. The colleges and schools provided instruction and maintenance for a price, namely, tuition. While in a sense the payment of the price involved the idea of a contribution to the institution for educational purposes, there was no such voluntary donation to the purposes of education as was contemplated by the act.

\* \* \* \* \* \* \*

I think there is merit also in the argument \* \* \* that tuition for the education of the children of a taxpayer may properly be deemed a family expense, and that therefore, by express provisions of the act, the petitioner is denied the right to the deductions claimed. \* \* \*

More recently in *Harold DeJong*, 36 T.C. 896 (1961), appeal pending (C.A. 9), we sustained the Commissioner's disallowance of part of a claimed charitable deduction in a similar situation. The taxpayers paid $1,075 to a tax-exempt educational society which operated a nonprofit school attended by taxpayers' two children, and claimed the amount as a charitable contribution. We found that part of the amount "was intended as payment in the nature of tuition for petitioners' children, a personal expense, and did not constitute a charitable

---

[4] Sec. 12. Gifts and bequests of personal property for charitable purposes.

\* \* \* \* \* \*

3. The attorney-general shall represent the beneficiaries in all such cases, and it shall be his duty to enforce such trusts by proper proceedings in the courts.

contribution." Referring to section 170, I.R.C. 1954, we stated, 36 T.C. at 899:

As used in this section the term "charitable contribution" is synonymous with the word "gift." * * * A gift is generally defined as a voluntary transfer of property by the owner to another without consideration therefor. If a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift. * * *

In *Estate of O. J. Wardwell*, 301 F. 2d 632 (C.A. 8, 1962), the Court of Appeals, reversing 35 T.C. 443 (1960), found that an enforcible pledge to endow a room in a church-operated tax-exempt home for the aged in anticipation of possible occupancy by the taxpayer was a charitable contribution since the taxpayer did not have a legally enforcible right of room occupancy and therefore received no legal consideration. In the instant case, however, we have found that the transfer flowed from a legally binding agreement on the part of the church to provide perpetual care of the cemetery lot.

Petitioners argue that the stock was transferred "for religious and charitable purposes" within the meaning of section 170 (c) (2), I.R.C. 1954, citing *Estate of Elizabeth L. Audenried*, 26 T.C. 120 (1956). As has been stated, not every payment to an organization which qualifies as a charity is a charitable contribution; the payment must be examined to see whether it is a "gift" or "contribution" within the meaning of the statute. *Channing* v. *United States, supra*. In the *Audenried* case decedent made a bequest in trust for perpetual care of her burial plot in a church-owned cemetery with the right to use excess income for maintenance of the entire cemetery. We held that the part of the bequest for care of decedent's plot was deductible for estate tax purposes as a funeral expense and that the remainder was deductible as a gift for the use of a religious corporation for a religious purpose under section 812(d), I.R.C. 1939. Unlike *Audenried*, the trust agreement here makes no provision for expenditure of income on the cemetery as a whole but reserves all the income for care of a particular private lot.

Petitioners contend that section 13–a of the Personal Property Law of the State of New York[5] provides that gifts in trust for perpetual care of private burial lots "shall be deemed to be for charitable and benevolent uses." Considering the entire section, it is evident that the

---

[5] Sec. 13–a. Trusts for care of cemeteries, cemetery lots, et cetera.—Gifts, grants and bequests of personal property, in trust for the purpose of perpetual care, maintenance, improvement or embellishment of cemeteries or private burial lots, * * * are permitted and shall be deemed to be for charitable and benevolent uses; and shall not be deemed to be invalid by reason of any indefiniteness or uncertainty of the persons designated as beneficiaries in the instrument creating the same, nor shall they be deemed invalid as violating any existing laws against perpetuities or suspension of the power of alienation of title to property. * * *

only purpose is to permit trusts for perpetual care. *In re Pearsall's Estate*, 211 N.Y.S. 841 (Surr. Ct. 1925). In any event, the mere denomination of the payment under State law is not authority for claiming a charitable contribution deduction from Federal income tax of an amount paid for perpetual care. *United States* v. *Pelzer*, 312 U.S. 399 (1941). Cf. *In re White's Will*, 195 N.Y.S. 2d 349 (Sup. Ct. 1959).

Petitioners argue finally that section 170(c)(5), I.R.C. 1954, was intended to and did grant the right to deduct the value of transfers for perpetual care of a particular cemetery plot as a charitable contribution. We are unable to find anything in the language of the statute or the legislative history of the section which allows a deduction for payments made for the upkeep of a particular plot. See, e.g., S. Rept. No. 1622, 83d Cong., 2d Sess., p. 210 (1954). Although Congress intended, by this section, to place certain nonprofit cemetery companies in the category of organizations which could receive charitable contributions, this does not require that all payments made to them must be so characterized. *Channing* v. *United States, supra.*

Petitioners find support for their position in the construction of section 170(c)(5), I.R.C. 1954, given by the Commissioner in his special rulings on March 15 and October 20, 1955, on which they relied. We do not believe those rulings were correct for the reasons we have stated heretofore. We do not understand petitioners as arguing that they were entitled to rely upon these rulings. *Goodstein* v. *Commissioner*, 267 F. 2d 127 (C.A. 1, 1959), affirming 30 T.C. 1178 (1958) ; *Weller* v. *Commissioner*, 270 F. 2d 294 (C.A. 3, 1959), affirming 31 T.C. 26 and 33 (1958), certiorari denied 364 U.S. 908 (1960); *Automobile Club* v. *Commissioner*, 353 U.S. 180 (1957).

We hold that the transfer of the shares of stock to the church in exchange for perpetual care of Anna Wood's particular lot was not a charitable contribution within the meaning of section 170, I.R.C. 1954, and therefore was not deductible from petitioners' 1957 income tax return. The transfer was made for a valuable consideration which renders it a personal and family expenditure. Thus the first issue is decided for the Commissioner.

It follows from the decision as to the first issue, and petitioners so concede, that the transfer of the stock resulted in taxable gain to petitioners. The transaction is the same as if Anna Wood had sold the shares and then paid the proceeds over to the church as the price for perpetual care of her burial plot. *United States* v. *Davis*, 370 U.S. 65 (1962); *United States* v. *General Shoe Corp.*, 282 F. 2d 9 (C.A. 6, 1960), certiorari denied 365 U.S. 843 (1961); *International Freighting Corp.* v. *Commissioner*, 135 F. 2d. 310 (C.A. 2, 1943).

The amount of capital gain is the difference between the value of the stock at the time of the transfer and Anna Wood's basis. Sec. 1001(a), I.R.C. 1954. A computation is necessary to correct the Commissioner's deficiency as to this item and to reflect the agreement of the parties as to other issues.

*Decision will be entered under Rule 50.*