JERRY R. WILLIAMSON AND SHARON K. WILLIAMSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williamson v. Commissioner
Docket Nos. 10193-83, 10194-83, 10195-83.
United States Tax Court
T.C. Memo 1985-106; 1985 Tax Ct. Memo LEXIS 529; 49 T.C.M. (CCH) 928; T.C.M. (RIA) 85106; March 7, 1985. Jerry R. Williamson, pro se. Deborah A. Butler, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in the individual income taxes of petitioners for the calendars years 1979, 1980 and 1981 in the respective amounts of $5,835, $10,589.40 and $12,651.80. The sole issue which we must decide is the deductibility of certain amounts claimed by petitioners as charitable contributions in their joint returns, and disallowed by respondent under section 170. [1]
FINDINGS OF FACT During the years in question, as well as at the time of filing their petitions herein, petitioners *531 were married and were residents of Dallas, Texas. In 1979 and for part of 1980, petitioner Jerry R. Williamson (hereinafter "Jerry") was employed by Compucon, Incorporated, as national sales manager of that organization. In the year 1980, Jerry changed his employment and became regional sales manager for Hughes Aircraft Company. For part of 1979, his wife, petitioner Sharon Williamson (hereinafter "Sharon") was employed as a secretary at the Dallas Athletic Club, and for the remainder of that year, as well as for the years 1980 and 1981, was employed as a secretary by a Mrs. Rosalie Taubman Shalom in Dallas. In 1977, Jerry experienced what he described as a "conversion," as the result of attending services at an institution known as the First Church of Religious Science, an organization which Sharon had served as secretary for a number of years. In the years 1979, 1980 and 1981 both petitioners at various times attended seminars and took courses of study at the First Church of Religious Science, and, in connection therewith, incurred charges for attendance fees and the purchase of written materials. In February 1979, having in some fashion become acquainted with the workings *532 of the Universal Life Church, Inc. of Modesto, California, Jerry secured a charter from that organization, authorizing him to establish a congregation of the Universal Life Church in Dallas, Texas. [2] The location of this newly established congregation was at the petitioners' residence at 4426 Bonham, Dallas, Texas. During the years before us, petitioners paid varios unspecified amounts to the Universal Life Church, Inc. of Modesto, California (also sometimes known as the "mother church"), for books, forms and other printed materials. Upon establishing his congregation, known as the North Dallas Universal Life Church, petitioners promptly opened a bank checking account in the name of the congregation at the Valley View Bank, of Dallas, Texas. Petitioners were the only persons authorized to draw checks on this account, and were in sole control thereof through the years before us. During some part of the years before us, Jerry produced copies of audio tapes on various spiritual subjects, narrated by one Mark Hanson (not *533 otherwise identified herein) and made such tapes available, on a loan or gift basis, to various interested individuals and groups. The number of such tapes produced, their costs and the breadth of their dissemination, were not established in this record, but certain individuals who appeared as witnesses at the trial of this case testified that they had heard one or more of such tapes. The size of Jerry's congregation in the years before us is unknown, as is the frequency and nature of meetings of the congregation held at petitioners' residence. Some meetings were apparently held, and at least on some occasions involved a mixture of religion, business and social affairs. After the establishment of the congregation's bank account, there were paid from it, at various times throughout the years before us, varying amounts for: mortgage principal and interest payments, utilities, repairs, insurance, and furniture, fixtures and equipment, all with respect to petitioners' residence at 4426 Bonham in Dallas. In addition, varying amounts were paid for entertainment, the purchase price and repairs to an automobile purchased from the congregation's account for Sharon's use, "allowances" *534 and "miscellaneous" (not otherwise identified in this record). At various times during the period before us, the local congregation also made loans to petitioner and others, in amounts and on terms not disclosed in this record. [3] The congregation's account was also used to pay charges and membership fees incurred by petitioners at the Prestonwood Country Club. In 1979, Sharon attended classes on the "Development of Spiritual Energy" from an organization known as the Aquarian Practitioners of Light Energy (APLE). In the years before us, petitioners made payments to the following entities from their personal bank accounts: Entity
1979
1980
1981
No. DallasUniversal
$20,141.00
$20,675.00
$17,480
Life Church[4]
Universal Life Church, Inc.
213.00
84.00
416
Modesto, Cal.
Church of Religious Science
714.85
1,630.44
Aquarian Practitioners of
235.00
Light Energy (APLE)
*535 In their joint income tax returns, petitioners claimed deductions for alleged charitable contributions in amounts as follows: year
Claimed Charitable Contribution
1979
[5] $19,127
1980
[5] 26,804
1981
29,348
Upon audit of petitioners' tax returns, respondent disallowed the claimed charitable contributions for 1979 and 1980 in their entirety, but disallowed only $27,425 of the claimed contributions for 1981, being identified on petitioners' return as contributions paid to the Universal Life Church. OPINION Petitioners challenge the disallowance by respondent of all their claimed charitable deductions for the years 1979 and 1980, and the disallowance of the claimed charitable deductions to the "Universal Life Church" for the year 1981. [6] At trial, petitioners presented evidence establishing payments in the amounts and to the organizations as described in our findings of fact, and claimed that they are entitled to charitable deductions in the respective years with regard to such payments, under the provisions of section 170. [7]
*536 Deductions are a matter of legislative grace, and taxpayers must satisfy the specific statutory requirements of the deductions they claim. Deputy v. DuPont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Taxpayers bear the burden of proving their entitlement to the deductions they claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). These rules apply with equal force to deductions claimed for charitable contributions. Thus, petitioners must prove that they made charitable contributions in the years in question to organizations qualifying under the statute. Examination of the record herein shows that petitioners have failed to meet their necessary burden of proof with respect to any of the claimed donations. (1) Payments to North Dallas Universal Life Church
As shown by our findings of fact, the principal entity to which claimed deductible contributions were made was the North Dallas Universal Life Church, established by petitioners pursuant to a "charter" granted to Jerry by the Mother *537 church, Universal Life Church, Inc. of Modesto, California. The claimed deductions here must fail on any one of the three following grounds: (a) The words "charitable contribution," as used in section 170, are synonymous with "gift." DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962); Seed v. Commissioner,57 T.C. 265, 275 (1971). Both the statute, section 170(a)(1), as well as respondent's regulations, section 1.170A-1(a)(1), Income Tax Regs., require that the charitable contribution be actually paid in the taxable year for which deduction is claimed. It is clear that there can be no completed gift for purposes of section 170, where the donor retains dominion and control over the subject matter of the gift. Davis v. Commissioner,81 T.C. 806 (1983). As the Supreme Court so trenchantly observed, "[A] gift is not consummate until put beyond recall." Burnet v. Guggenheim,288 U.S. 280, 286 (1933). [8]
*538 The record herein shows that all the claimed contributions by petitioners to the North Dallas Universal Life Church were made to a bank account established in the name of that organization by petitioners, and over which petitioners alone had dominion and control, being the only persons authorized to draw checks thereon. There is no evidence in this record of any restriction upon petitioners' ability to use these funds for any purpose they desired, and as we shall see, infra, their power was liberally used. We accordingly conclude, all other considerations aside, that no deductible contribution was made by petitioners to the North Dallas Universal Life Church in the years in question, since their dominion and control over the money was so extensive that no completed gift can be considered to have been made. Davis v. Commissioner,supra.
(b) Other than the "charter" granted to Jerry by the Universal Life Church, Inc. of Modesto, California, there is nothing in this record to show that the North Dallas Universal Life Church was organized so as to qualify as a religious or charitable institution within the meaning of section 170(c)(2). [9]
*539 So far as the operations of the North Dallas Universal Life Church were concerned, only the most generalized and inconclusive testimony was offered. We do not know the size of the congregation, when or how often it met, or what the subject matter of those meetings was. Jerry testified that he caused to be produced multiple copies of audio tapes on religious and spiritual subjects (specimen copies were admitted in evidence), which were made available on a loan or gift basis to interested individuals and groups, but there is no indication of the extent of this activity in the years before us, and we are accordingly unable to make any finding that the North Dallas Universal Life Church was an entity operating in any identifiable manner as a church, within the meaning of section 170(c)(2). Petitioners appear to rely, at least in part, on the fact that, in the years in question, the mother church, Universal Life Church, Inc. of Modesto, California, held a specific exemption from tax as an organization qualifying under section 501(c)(3) (see Universal Life Church, Inc. v. United States,372 F. Supp. 770 (E.D. Cal. 1974)), and urge that such exemption also *540 covers petitioners' local chapter or congregation. Petitioners are in error. As we have repeatedly held, the exemption of the mother church was not a group exemption, and did not cover its autonomous local congregations or chapters such as the North Dallas Universal Life Church. Davis v. Commissioner,81 T.C. at 815 n. 9. (c) Finally, the record herein shows that throughout the years in question, petitioners used the funds of the North Dallas Universal Life Church as an alternative personal pocketbook, paying therefrom a variety of their personal expenses, including interest and principal payments on the mortgage on their home, repairs, insurance, purchasing furniture and fixtures therefor, paying their country club dues and charges, and acquiring and paying the expenses of an automobile for the use of Sharon, whose work on behalf of the church was not shown. This pervasive use of the congregation's funds for petitioners' personal purposes was amply demonstrated in this record *541 through canceled checks from the congregation's bank account, as well as certain monthly reports of the congregation's receipts and expenditures, maintained by petitioners, all of which were admitted in evidence. Such use of the local chapter's funds clearly violates the prohibitions of section 170(c)(2)(C). McGahen v. Commissioner,76 T.C. 468 (1981), affd. in unpublished order (3d Cir. 1983); Church of the Transfiguring Spirit v. Commissioner,76 T.C. 1 (1981). 2. Payments To Universal Life Church, Inc. of Modesto, CA.
As shown by our findings, petitioners made modest payments in each of the years in issue to the Universal Life Church, Inc. of Modesto, California, an organization which, in the years in question, concededly was an organization to which deductible charitable contributions could be made. [10]Not every payment to a qualified charity, however, is a deductible charitable contribution. Seed v. Commissioner,supra;Estate of Wood v. Commissioner,39 T.C. 1, 6 (1962). If the payment is made in return *542 for a benefit or something of value, it is not a gift, Commissioner v. Duberstein,363 U.S. 278 (1960); Bogardus v. Commissioner,302 U.S. 34 (1937); DeJong v. Commissioner,supra.A gift is voluntary transfer of money or property without consideration. DeJong v. Commissioner,supra.
The record in this case shows that, throughout the period in question, petitioners made payments to the Universal Life Church, Inc. for books, forms and other printed materials. The burden of proof here was on petitioners to show that the payments which they made and proved were free will donations or gifts, rather than payments for the purchase of such items, Rule 142(a). They failed entirely to do this, and accordingly these payments must be disallowed. 3. Payments To First Church Of Religious Science *543 and to the Aquarian Practitions of Light Energy (APLE).
As disclosed by our findings of fact, petitioners made payments in 1979 and 1980 to the First Church of Religious Science, and in 1979 also made payments to the Aquarian Practitioners of Light Energy (APLE). The record here is totally devoid of any evidence as to what these organizations were, or that they qualified in any manner as eligible to receive tax-deductible contributions under section 170. The record does clearly disclose, however, and we have found, that one or more petitioners took "courses" from each of the institutions during the period in question and, in connection therewith, paid money for course fees, books and printed materials. Petitioners must accordingly fail in their claimed deduction for these amounts, both on the grounds that they have failed to show that the recipient organizations were qualified donees under section 170(c), as well as for their failure to demonstrate that the payments in question were true gifts or contributions, as opposed to payfments for goods and services received. DeJong v. Commissioner,supra;Seed v. Commissioner,supra.
To *544 give effect to the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. The record does not disclose whether either Jerry or Sharon were ever ordained as "ministers" by the Universal Life Church or any other organization.↩
3. The foregoing findings are based upon monthly records of the receipts and expenditures of the local congregation, received in evidence as petitioners' exhibit. The records were not complete for all months.↩
4. These payments were all deposited in the congregation's account at the Valley View Bank controlled by petitioners.↩
5. The claimed amount represented 50 percent of petitioners' adjusted gross income, as reported.↩
6. Other than for the year 1981, none of the claimed charitable donees was identified in petitioners' returns. ↩
7. The relevant provisions of sec. 170 are as follows: SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General Rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary. * * * (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B). Rules similar to the rules of section 501(j) shall apply for purposes of this paragraph. * * * For purposes of this section, the term "charitable contribution" also means an amount treated under subsection (g) as paid for the use of an organization described in paragraph (2), (3), or (4).↩
8. Although the Supreme Court made this comment in the context of a gift tax case, the principle enunciated is equally applicable under sec. 170↩.
9. At trial, petitioners offered in evidence certain documents purporting to be the organizational meeting of the directors of the North Dallas Universal Life Church, as well as minutes of subsequent meetings of that body. Upon inquiry, however, it developed that these documents were not the originals nor exact copies of the originals of the minutes of said meetings, but were prepared after the fact, and apparently in preparation for the trial of this case, and had undergone some editing in the process. The originals were not in the courtroom so that the accuracy of the purported copies could be verified, and the exhibits were accordingly refused.↩
10. Under date of September 4, 1984, the Internal Revenue Service revoked its prior ruling that the Universal Life Church, Inc. was a qualified organization under sec. 170(c)(2). Ann. 84-90, 1984-36 IRB 32↩.