ESTATE OF WILLIAM M. TUCK, DECEASED, LESTER L. DILLARD, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Tuck v. Commissioner
Docket No. 9681-87.
United States Tax Court
T.C. Memo 1988-560; 1988 Tax Ct. Memo LEXIS 589; 56 T.C.M. (CCH) 827; T.C.M. (RIA) 88560; December 8, 1988. Kurt R. Magette, for the petitioner. John C. McDougal, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a deficiency in Federal Estate taxes due from the Estate of William M. Tuck in the amount of $ 4,689,85. The sole issue for decision is whether decedent's $ 10,000 bequest for perpetual care of a family cemetery in which decedent is not buried may be deducted by his estate as a funeral expense under section 2053(a)(1), I.R.C. 1954. The case was submitted on the basis of a stipulation of facts. The decedent, William M. Tuck, was a prominent attorney and politician. He was born in Halifax County, Virginia, on September 28, 1896, and was a resident of the town of South Boston in Halifax County, Virginia, at his death on June 9, 1983. He had been the Lieutenant Governor *591 of Virginia (1942-1946), its Governor (1946-1950), and from 1953 to 1969 a member of the United States House of Representatives. The people of South Boston were proud to have the decedent as a resident of their town, and they dedicated a portion of the town museum "to his honor". The museum, which contains numerous artifacts and portraits of the decedent, is located in downtown South Boston. At the time of his death, decedent owned a 270-acre family farm, sometimes referred to as the "homeplace", in Red Bank District of Halifax County, about 12 to 15 miles from South Boston. It contained a family cemetery plot of more or less than one acre, which decedent referred to in his will as the "Tuck Family Cemetery Plot". In Article III of the will, he gave some 15 acres (including the one-acre family cemetery) to the trustees of five local churches to be used as a community cemetery for those churches. He also bequeathed $ 10,000 to the trustees "for the development, improvement, maintenance and beautification of said cemetery". In the alternative, if the churches declined to accept the bequest, decedent provided that the one-acre Tuck family cemetery along with the $ 10,000 would *592 go to Virginia Bank/Citizens of South Boston, Virginia, to be held in trust to provide a burial place for members of decedent's family and the money was to be used to develop, maintain, and beautify the family cemetery. Although the record does not explicitly so state, it would appear that the churches did not accept the 15-acre gift along with the $ 10,000. Also, Virginia Bank refused to accept the one-acre family cemetery and the $ 10,000. The executors of the estate thereupon established a trust with Lester L. Dillard, III, as trustee. The trust was funded with the $ 10,000 bequest for the purpose of maintaining the family cemetery pursuant to decedent's directions. Decedent's wife had predeceased him and was buried in the Oak Grove Cemetery in South Boston, within walking distance of the town museum. He left no instructions as to where he wished to be buried, but Article I of his will provided for the payment of "all expenses incident to my demise, as well as [of] the cost of erecting a suitable and modern marker at my last resting place, the selection of which is to be made by my hereinafter named Executors". He was not buried in the Tuck family cemetery, but instead *593 in the Oak Grove Cemetery where his wife was buried. A significant factor in selecting that cemetery was its proximity to the town museum, thereby making it easily accessible to visitors and the townspeople, who had affection and respect for him. A headstone was erected reciting his political career. The parties have stipulated that the "burial location provides a historical and educational benefit to the community and the Commonwealth". On the estate tax return, the following items were claimed as deductible "funeral expenses": Powell Funeral Home, Inc. - funeral
4,336.80
Rev. James Rowles - service
100.00
Giles Florist - flowers
44.20
South Boston Memorials - marker
598.00
United Virginia Bank - Cemetery
perpetual care
10,000.00
Total
15,079.00
The only adjustment made by the Commissioner in his determination of deficiency was his disallowance of a deduction for the $ 10,000 bequest as a "funeral expense". Section 2053(a) of the Internal Revenue Code provides for a deduction for "funeral *594 expenses", administration expenses, and other claims against the estate, "as are allowable by the laws of the jurisdiction, * * * under which the estate is being administered". Like provisions have been in our estate tax law for many years, as far back as 1916. [1] In our judgment, the $ 10,000 bequest does not qualify as a "funeral expense", or, for that matter, any "expense" at all incurred by the estate. It was merely a bequest for the benefit of the Tuck family cemetery at the family farm. As we interpret the term "funeral expenses", it means expenses incurred in connection with the decedent's funeral. Thus, the Commissioner has allowed as funeral expense deductions here $ 4,336.80 paid to the funeral home, $ 100 for a clergyman's services, $ 44.20 for flowers, and $ 598 for a marker -- expenses all incurred in *595 connection with the decedent's burial at the Oak Grove Cemetery. The $ 10,000 bequest for the perpetual care of the Tuck family cemetery, some 12-15 miles away, stands on an entirely different footing. It was not an obligation incurred by the executors in connection with decedent's funeral. Squarely in point is Estate of Gillespie v. Commissioner,8 T.C. 838 (1947), where the decedent had bequeathed $ 5,000 for the perpetual care of a lot in a cemetery in which members of his family were buried. The decedent himself, however, was buried in an entirely different cemetery. In approving the disallowance of the claimed deduction, the Court stated that the deduction (p. 840) "relates to expenses of the decedent's funeral, not to the expenses of the funeral of any other, or to costs of perpetual care of the burial places of others". Petitioner seeks to distinguish Gillespie on the ground that the decedent in that case never intended to be buried in the family burial lot, a fact that was noted in the Gillespie opinion. 8 T.C. at 840. However, in our view, *596 that fact was not critical to the decision therein. The point in that case was that the term "funeral expenses" as used in the statute was construed to refer to the expenses of the decedent's funeral, not to those of the funerals of others. Moreover, there is no solid or reliable evidence in the present case that the decedent herein wished to be interred in his family cemetery at the family farm rather than in the cemetery where his wife was buried, or where his executors might choose to have him buried. Indeed, Article I of his will is fairly susceptible of being read as leaving the selection of his "last resting place" to his executors. And we have but little confidence in the affidavits and stipulated hypothetical testimony of close friends and associates of the decedent in support of petitioner's contention that Governor Tuck wished to be buried in the family cemetery. We find such affidavits and stipulated testimony to be too loose and speculative to serve as a reliable guide to the decedent's intentions, particularly in the light of the foregoing provision of Article I of his will. *597 Also, we note that among the funeral expenses listed in the estate tax return there was no expenditure for a plot at the Oak Grove Cemetery where he was in fact buried. This suggests that the plot had already been acquired years ago for both him and his wife with the expectation that both spouses would be buried in the same place. In any event, we are thoroughly satisified on this record that petitioner's contentions as to the decedent's wishes do not serve to render Gillespie inapplicable. Even if such presumed wishes were relevant, petitioner has failed in our view to carry its burden of proof in this respect. This case is to be sharply distinguished from Estate of Cardeza v. Commissioner,5 T.C. 202, 220-221 (1945), affd. 173 F.2d 19 (3d Cir. 1949). There, the decedent bequeathed $ 25,000 for the perpetual care, maintenance, and beautification, as specified, of the mausoleum in which she was to be interred. She further directed that after the death of her son, his wife, and his lineal descendants, the mausoluem was to be sealed and no others placed therein or interred in the lot surrounding it. There, the expenses were plainly occasioned *598 by and directly related to the decedent's own interment and only secondarily to funerals of members of her family. There is a bright line between Cardeza and Gillespie, a line that was recognized in Rev. Rul. 57-530, 1957-2 C.B. 621, which reflects administrative practice in the IRS, and which has now been outstanding for some 30 years. The fact that the Court in Cardeza did not make any allocation of the $ 25,000 between the portion thereof relating directly to the decedent and the portion relating to her descendants was arguably at least in accord with regulations which have been in effect for many years in substantially the same form, and which may fairly be construed as taking a practical view of the matter. Section 20.2053-2, Estate Tax Regs., provides that the term funeral expenses includes "A reasonable expenditure for a tombstone, monument, or mausoleum, or for a burial lot, either for the decedent or his family, including a reasonable expenditure for its future care". [2] (Emphasis supplied.) Petitioner relies upon the underscored words as establishing *599 that the term "funeral expenses" may refer to expenditures made exclusively for members of the decedent's family. Although such an interpretation is theoretically possible, we think that, in the light of the obvious purpose of the statute in coupling funeral expenses together with administration expenses and claims against the estate, a sounder interpretation would simply be that the existence of concomitant benefit to members of the decedent's family would not preclude the deductibility of a funeral expense actually incurred in connection with the decedent's own funeral and that as a practical matter the necessity for an allocation would be dispensed with. In any event, the line has been drawn between cases in which the expenses were incurred in connection with the decedent's own interment (Cardeza) and those where the funeral of the decedent bears no relevance to the expenditures *600 in question (Gillespie). What we have here is merely a bequest for the benefit of members of the decedent's family, unrelated to his own funeral. We hold that they are not deductible as expenses incurred by the estate in connection with the decedent's funeral. They are not funeral expenses of this decedent. To take into account a credit for death taxes paid to the Commonwealth of Virginia, Decision will be entered under Rule 155.
Footnotes
1. Sec. 203(a)(1) of the Revenue Act of 1916, ch. 463, 39 Stat. 756, 778; sec. 403(a)(1), Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1098; sec. 303(a)(1), Revenue Act of 1926, ch. 27, 44 Stat. 9, 72; sec. 812(b)(1), Internal Revenue Code of 1939↩, ch. 2, 53 Stat. 123.
2. Like provisions first appeared in Article 40 of Regulations 37 (1916, 1917, 1919, and 1921), followed by Article 34, Regulations 63 (1919); Article 31, Regulations 70 (1926 and 1929); sec. 81.31, Regulations 105 (1942); and finally in the regulations now in effect, quoted in the text above.↩