T.C. Summary Opinion 2002-48

UNITED STATES TAX COURT

HERBERT DONALD SINGER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11554-00S.            Filed May 7, 2002.

Herbert Donald Singer, pro se.

<u>Michael W. Berwind</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered in this case is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1] All subsequent section references are to the Internal Revenue Code in effect for 1996 and 1997, the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes and accuracy-related penalties for 1996 and 1997 as follows:

| Year | Deficiency | Penalty Sec. 6662 |
|------|-----------|-------------------|
| 1996 | $11,370 | $2,274 |
| 1997 | 16,359 | 3,271 |

After a concession by respondent,[2] the issues remaining for decision are as follows:

(1) Whether petitioner engaged in his "health, wealth and healing ministry" activity for profit within the meaning of section 183 during each of the years in issue.  We hold that he did not.

(2) Whether petitioner is entitled to deductions for his "health, wealth and healing ministry" activity for 1997.  We hold that he is not.

(3) Whether petitioner is entitled to a deduction for charitable contributions for 1997 in an amount greater than that conceded by respondent.  We hold that he is not.

(4) Whether petitioner is liable for the accuracy-related penalty under section 6662(a) for negligence or intentional disregard of rules or regulations for each of the years in issue.

_____

[2] Respondent concedes that petitioner is entitled to a deduction for charitable contributions in 1997 in the amount of $1,500.  The extent, if any, to which this concession may have a tax effect will be determined by the parties in their Rule 155 computation.  See sec. 63(c).

We hold that he is.

Adjustments relating to the taxable portion of petitioner's Social Security benefits, miscellaneous itemized deductions, and self-employment tax are purely mechanical matters, the resolution of which is dependent on our disposition of the disputed issues.

## Background

Some of the facts have been stipulated, and they are so found. Petitioner resided in Rancho Mirage, California, at the time that his petition was filed with the Court.

### A. Petitioner and His Background

Petitioner was born in May 1929, and he turned 67 in 1996.

Petitioner is a former account executive (stockbroker) for E.F. Hutton Group, Inc. Petitioner retired from E.F. Hutton sometime prior to 1996.

In 1989, petitioner acquired the title of "bishop" from Universal Life Church, Inc., of Modesto, California. A few years later, in 1994, petitioner purportedly completed a "non-secular course of study" and became a "lymphologist". Petitioner's "certificate" from "The International Academy of Lymphology" recites, in part, that "Based on the United States Supreme Court and Federal District Court guidelines, the right to teach and practice this Non-Secular Science anywhere in the United States comes from God and is PROTECTED BY THE CONSTITUTION IN THE FIRST AMENDMENT'S FREE EXERCISE CLAUSE."

B.  The "Health, Wealth and Healing Ministry" Activity

During the years in issue, petitioner was engaged in a self-proclaimed "health, wealth and healing ministry" activity.  At trial, petitioner described this activity as follows:

> Well, people need to be understood in terms of the fact that they have a body.  They are a spirit, a speaking spirit, and they have a soul.
>
> And if you don't account for the totality of the individual, then you really can't do anything to be in a compassionate program with them, to help them go from where they are to where they want to be.
>
> *    *    *    *    *    *    *
>
> But I have to be responsible for helping people in terms of health, and in terms of creating wealth.  And that has to be done God's way, because if we don't do things God's way and we do them the world's way, we're far behind what happens when we do it God's way.
>
> And so you have to help people to get a picture of why it is so urgently important to do things God's way, and not the world's way.  And that puts you far above anybody that's doing everything the world's way.
>
> And people have to understand that you can't function in business, unless you're healthy.  And you certainly can't make any money, unless you're willing to learn how to make money.
>
> And my whole approach is based on that idea of helping people learn how to make money.

It would appear that the approach taken by petitioner in "helping people learn how to make money" was his sponsorship of, or participation in, a broad range of multilevel marketing

programs.[3]  At trial, petitioner described several of these

programs:

> And the first business I got into, in multi-level marketing, was marketing electricity.  I paid $1,250 for the worldwide rights for the Los Angeles--well, the United States rights.  And * * * it all went down the drain.  They could never deliver electricity.[4]

*   *   *   *   *   *   *

> I was in one that I'm still in, called Life Plus, which has every disease known to mankind, and what particular product in Life Plus to take for that.

*   *   *   *   *   *   *

> THE COURT: * * *  So we take it then that just about anything and everything under the sun is part of your ministry?

> PETITIONER: No, no.

> THE COURT:  No?

> PETITIONER: Only the things that I've actually joined, Your Honor.  And I gave you one of those, set up--

---

[3]  As we understand them, these multi-level marketing programs were essentially pyramid arrangements characterized by various tiers and chains of "distributors", each of whom was interested less in the selling of "product" and more in the recruiting of "downline distributors".  See, e.g., Nissley v. Commissioner, T.C. Memo. 2000-178, for a description of the "pyramid" incentive system maintained by Amway Corp.

[4]  Petitioner's testimony occasioned the following colloquy:

> THE COURT:  You were going to be kind of like your own Enron Corporation?

> PETITIONER:  Well, something like that.  Anyone who came in, anyone in the United States was supposed to be under the people who originally got it started.  Then they could never deliver electricity.

THE COURT: I mean, let's put it this way, anything you get involved in, becomes part of your ministry. Is that what you're telling us?

PETITIONER: Well, if I sign up for a multi-level marketing situation, then that's part of what I am using in the overall picture to help people to make money.

C. Recordkeeping

Petitioner did not maintain a separate bank account for his "health, wealth and healing ministry" activity. Rather, he maintained a single checking account for all of his affairs.

Of the hundreds of checks that he wrote during the years in issue, petitioner categorized the vast majority, including all of the checks written to grocery stores, as "unreimbursed employee expenses". Indeed, petitioner categorized only a couple of checks (in the aggregate amount of $40) as "household expenses". In this regard, petitioner testified at trial that he lived with his mother who paid most, if not all, of his personal living expenses. Thus, for example, petitioner testified: "I wasn't buying any of the food. My mother was buying it all." and that "I didn't do any of my own shopping."

D. Financial Track Record of Petitioner's Activity

As of the date of trial, petitioner had yet to make a profit in his "health, wealth and healing ministry" activity.

E. Petitioner's 1996 Income Tax Return

Petitioner filed a Format U.S. Individual Income Tax Return, Form 1040PC, for 1996, listing his occupation as "healing

ministry".  On his return, petitioner reported passive income from several sources in the aggregate amount of approximately $65,000 (exclusive of tax-exempt interest and Social Security benefits), and he claimed certain losses, including a "business loss" in the amount of $38,923 from his "health, wealth and healing ministry" activity.  Petitioner reported a total tax liability of $441 on his return.

In support of his claimed "business loss", petitioner attached to his return a Schedule C, Profit or Loss From Business, for his "health, wealth and healing ministry" activity. Petitioner reported no income on his Schedule C.  In contrast, petitioner claimed expenses in the aggregate amount of $38,923, consisting of the following:

| | | |
|---|---:|---:|
| Car expenses | | $4,403 |
| Legal & professional services | | 4,851 |
| Supplies | | 1,487 |
| Meals and entertainment | | 314 |
| Other expenses | | |
|     Business storage/rental | $12,000 | |
|     Postage | 291 | |
|     Printing/copies | 93 | |
|     Professional publications/ | | |
|       books/tapes/seminars | 15,021 | |
|     Telephone | 463 | 27,868 |
| Total expenses | | 38,923 |

According to petitioner, the deduction for "Business storage/rental" represented monthly rent of $1,000 paid to his mother for a dwelling unit used to store his "ozone machines", "wigglers", oriental "heat type things", and other product and material for his "health, wealth and healing ministry" activity.

F.  Petitioner's 1997 Income Tax Return

Petitioner filed a U.S. Individual Income Tax Return, Form 1040, for 1997, listing his occupation as "healing ministry".  On his return, petitioner reported passive income from several sources in the aggregate amount of approximately $68,000 (exclusive of tax-exempt interest and Social Security benefits), and he claimed certain losses, including a "business loss" in the amount of $46,851 for his "health, wealth and healing ministry" activity.  Petitioner reported a total tax liability of $844 on his return.

In support of his claimed "business loss", petitioner attached to his return a Schedule C, Profit or Loss From Business, for his "health, wealth and healing ministry" activity. On his Schedule C, petitioner reported gross receipts, gross profit, and gross income, all in the amount of $1,400.  In contrast, petitioner claimed expenses in the aggregate amount of $48,251, consisting of the following:

| | | |
|---|---:|---:|
| Advertising | | $237 |
| Car expenses | | 2,856 |
| Legal & professional services | | 5,080 |
| Supplies | | 1,301 |
| Meals and entertainment | | 255 |
| Other expenses | | |
|     Business storage/rental | $11,000 | |
|     Network fee | 2,895 | |
|     Network fee | 136 | |
|     Postage | 247 | |
|     Printing/copies | 868 | |
|     Professional publications/ | | |
|       books/tapes/seminars | 22,160 | |
|     Secretarial services | 500 | |
|     Telephone | 716 | 38,522 |
| Total expenses | | 48,251 |

According to petitioner, and as on his prior year's return, the deduction for "Business storage/rental" represented monthly rent paid to his mother for a dwelling unit used to store product and material for his "health, wealth and healing ministry" activity.

In computing taxable income on his 1997 return, petitioner itemized his deductions using Schedule A.  Among the various deductions claimed, petitioner listed gifts to charity as follows:

| | |
|---|---:|
| Gifts by cash or check | $4,435 |
| Other than by cash or check | 5,340 |
| Carryover from prior year | 66,214 |

Petitioner claimed a deduction in the amount of $9,497, consisting of one-half of his reported adjusted gross income of $18,994, and claimed $66,492 as a carryover to the following taxable year.

In support of his claim of gifts to charity "other than by

cash or check", petitioner attached to his return Form 8283, Noncash Charitable Contributions. On that form, petitioner identified United Cancer Research Society of Palm Springs, California, as the donee and described the donated property as "clothing, furniture, books, misc." having a cost or adjusted basis of $36,000.[5]

### G. The Notice of Deficiency

In the notice of deficiency, respondent determined that petitioner's "health, wealth and healing ministry" activity was not an activity engaged in for profit. Respondent also determined that petitioner failed to substantiate the expenses claimed on his Schedule C for 1997 and that such expenses were personal and not ordinary and necessary business expenses.

In addition, respondent determined that petitioner is not entitled to a deduction for 1997 for charitable contributions. However, at trial, respondent conceded that petitioner was entitled to a $1,500 deduction for that year.

Finally, respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) for negligence or intentional disregard of rules or regulations for each year.

---

[5] On a Schedule A for 1996, petitioner also claimed noncash gifts to United Cancer Research Society, describing the donated property as "clothing, books, housewares, TV, misc." having a cost or adjusted basis of $12,000. Petitioner also claimed on his 1996 Schedule A a carryover of charitable contributions "from prior year" in the amount of $68,396.

- 11 -

Discussion

A. Activity Not Engaged In For Profit Under Section 183(c)

Under section 183(a), if an activity is not engaged in for profit, then no deduction attributable to that activity is allowable except to the extent provided by section 183(b).  In essence, section 183(b) allows deductions to the extent of gross income derived from such activity.

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."  Deductions are allowable under section 162 or under section 212(1) or (2) only if the taxpayer is engaged in the activity with the "actual and honest objective of making a profit."  Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Fuchs v. Commissioner, 83 T.C. 79, 97-98 (1984); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.  Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide.  See Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Beck v. Commissioner, 85 T.C. 557, 569 (1985).

Whether the requisite profit objective exists is determined by evaluating all surrounding facts and circumstances.  Keanini v. Commissioner, 94 T.C. 41, 46 (1990); sec. 1.183-2(b), Income

Tax Regs. Greater weight is given to objective facts than to taxpayers' self-serving statements of intent. Westbrook v. Commissioner, 68 F.3d 868, 875-876 (5th Cir. 1995), affg. T.C. Memo. 1993-634; sec. 1.183-2(a), Income Tax Regs. Taxpayers bear the burden of proving that they engaged in the activity with the objective of making a profit. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).[6]

Based on all of the facts and circumstances of this case, we are not convinced that petitioner engaged in his "health, wealth and healing ministry" activity for profit. Indeed, we are not convinced that petitioner's activity was much more than a strategy that was designed generally to lower, if not to virtually eliminate, petitioner's Federal income tax liability by converting personal living expenses into deductible business

---

[6] Applicable to court proceedings arising in connection with examinations commencing after July 22, 1998, sec. 7491(a)(1) generally places on the Commissioner the burden of proof with respect to factual issues relevant to ascertaining the taxpayer's liability for income tax. See Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3001(a), (c)(1), 112 Stat. 685, 726, 727. However, sec. 7491(a) only applies if, inter alia, the taxpayer first introduces credible evidence with respect to such factual issues. Higbee v. Commissioner, 116 T.C. 438, 442 (2001). We do not regard petitioner's conclusory, self-serving, and sometimes fantastical statements as credible evidence within the meaning of sec. 7491(a)(1). See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); see also Sykes v. Commissioner, T.C. Memo. 2001-169. Accordingly, we decide the issue before us without regard to the general burden-shifting rule of sec. 7491(a)(1).

expenses.  At best, petitioner's activity was a fanciful attempt, not grounded in reality, to reach some promised land. Accordingly, we hold that petitioner did not engage in his "health, wealth and healing ministry" activity for profit within the meaning of section 183 in either of the years in issue.[7]

B.  Schedule C Deductions

Although petitioner did not report any income from his "health, wealth and healing ministry" activity in 1996, he did report $1,400 from such activity in 1997.  This is relevant because even if an activity is not engaged in for profit, section 183(b) allows deductions to the extent of gross income.  Of course, deductions must still be substantiated.  See generally secs. 162, 274; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  In this regard, respondent contends that petitioner failed to substantiate any deductions.

At trial, petitioner introduced no substantiation that would satisfy the stringent recordkeeping requirements of section 274(d).  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

---

[7]  Our holding also serves to absolve petitioner from liability for self-employment tax for 1997, see sec. 1402(a) and (c), and to deny him any deduction under sec. 164(f) for that year.

Moreover, petitioner's monthly checking account statements, in and of themselves, do not constitute adequate substantiation for purposes of the general recordkeeping requirements of sections 162 and 212. See generally sec. 6001 and sec. 6001-1, Income Tax Regs., requiring a taxpayer to maintain records sufficient to enable the Commissioner to determine the taxpayer's correct tax liability.

We recognize that under certain circumstances, the Court may estimate the amount of a deductible expense and allow the deduction to that extent. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order to estimate the amount of an expense, we must have some basis upon which an estimate may be made. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Without such a basis, any allowance would amount to unguided largesse. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

In the present case, we need not decide whether it is appropriate to exercise our discretion under the Cohan rationale because the maximum deduction to which petitioner might be entitled under section 183(b) for 1997; i.e., $1,400, would have no tax effect. This is the case because petitioner's "health, wealth and healing ministry" activity was not engaged in for profit; thus, any section 183(b) deductions would not be allowable from gross income, but rather it would only be allowable from adjusted gross income as miscellaneous itemized

deductions.  See sec. 62(a); see also sec. 67(a), imposing a 2-percent floor on miscellaneous itemized deductions.  And for 1997, petitioner's allowable itemized deductions, including potentially $1,400 of section 183(b) deductions, do not exceed the standard deduction for that year.  See sec. 63(c).  See also <u>infra</u> subdivision "C"  regarding charitable contributions deductions.

## C.  Charitable Contribution Deductions

Respondent disallowed petitioner's deduction for charitable contributions for 1997.  However, at trial, respondent conceded that petitioner is entitled to a deduction in the amount of $1,500.  Petitioner bears the burden of proving that he is entitled to a deduction in a greater amount.[8]

At trial, petitioner failed to introduce any persuasive evidence that would substantiate the making of charitable contributions in an amount greater than that conceded by respondent.  See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 443-444 (2001); <u>Jennings v. Commissioner</u>, T.C. Memo. 2000-366, affd. 19

---

[8]  As previously noted, sec. 7491(a)(1) as a general rule places on the Commissioner the burden of proof with respect to factual issues relevant to ascertaining the taxpayer's liability for income tax.  However, this burden-shifting rule applies only if, inter alia, the taxpayer has complied with substantiation requirements and has maintained all required records.  Sec. 7491(a)(2)(A) and (B); see <u>Higbee v. Commissioner</u>, 116 T.C. 438, 441 (2001); <u>Sykes v. Commissioner</u>, T.C. Memo. 2001-169.  Because petitioner did not comply with sec. 7491(a)(2)(A) and (B), we decide the issue before us without regard to the general burden-shifting rule of sec. 7491(a)(1).

Fed. Appx. 351 (6th Cir. 2001); sec. 170(a)(1), (f)(8); sec. 1.170A-13, Income Tax Regs.; see also Estate of Wood v. Commissioner, 39 T.C. 1, 6 (1962) ("not every payment to an organization which qualifies as a charity is a charitable contribution"); Saba v. Commissioner, T.C. Memo. 1980-199; Arceneaux v. Commissioner, T.C. Memo. 1977-363; Nelson v. Commissioner, T.C. Memo. 1974-239.

In particular, petitioner introduced no meaningful evidence that would substantiate the making of noncash charitable contributions in any amount.[9] Nor did petitioner introduce any evidence whatsoever that would substantiate a charitable contribution carryover from a prior taxable year(s). The law is clear: The fact that a taxpayer reports a deduction on the taxpayer's income tax return is not sufficient to substantiate the deduction claimed on the return. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974). A tax return is merely a statement of the taxpayer's claim; the return is not presumed to be correct. Wilkinson v. Commissioner, supra; Roberts v. Commissioner, supra; see Seaboard Commercial Corp. v. Commissioner, 28 T.C. 1034, 1051 (1957) (a

---

[9] At trial, the only evidence introduced by petitioner regarding purported noncash contributions was a 3- by 5-inch printed card from United Cancer Research Society that appears to be designed principally to explain to prospective donors why their "discards" cannot be accepted for donation, e.g., "articles require too much repair" or "driver unable to determine what is to go". In any event, the card is undated and bears no indication what property may have been offered for donation.

taxpayer's income tax return is a self-serving declaration that may not be accepted as proof for the deduction or exclusion claimed by the taxpayer); <u>Halle v. Commissioner</u>, 7 T.C. 245 (1946) (a taxpayer's return is not self-proving as to the truth of its contents), affd. 175 F.2d 500 (2d Cir. 1949).

D.  Accuracy-related Penalty

Finally, we consider whether petitioner is liable for the accuracy-related penalty under section 6662(a) for 1996 and 1997.

Section 6662(a) and (b)(1) provides that if any portion of an underpayment of tax is attributable to negligence or disregard of rules or regulations, then there shall be added to the tax an amount equal to 20 percent of the amount of the underpayment that is so attributable.  The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and any failure to keep adequate books and records or to substantiate items properly, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Petitioner bears the burden of proving that the negligence penalty is inapplicable.  See Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. at 84; <u>Welch v. Helvering</u>, 290 U.S. at 115.[10]

_____

[10]  Applicable to court proceedings arising in connection with examinations commencing after July 22, 1998, sec. 7491(c) places on the Commissioner the burden of production with respect to a taxpayer's liability for any penalty.  See RRA 1998 sec. 3001(a), (c)(1), 112 Stat. 726, 727.  We hold that respondent
(continued...)

At trial, petitioner argued that "there's nothing in the IRS Code that says that taxes are anything but voluntary." Apparently in petitioner's view, respondent should be satisfied with what petitioner has previously reported as his tax liability on his returns and should not be dunning him for anything more.

The short answer to petitioner's argument is that it is wrong, it is frivolous, and it deserves no further discussion. See Crain v. Commissioner, 737 F.2d 1417 (5th Cir. 1984); see also Wilcox v. Commissioner, 848 F.2d 1007, 1008 (9th Cir. 1988) (rejecting taxpayer's claim that paying taxes is voluntary), affg. T.C. Memo. 1987-225; Carter v. Commissioner, 784 F.2d 1006, 1009 (9th Cir. 1986) (same); Bland-Barclay v. Commissioner, T.C. Memo. 2002-20 ("This Court and Federal courts across the nation have repeatedly rejected the argument that * * * reporting and paying income taxes is strictly voluntary.").

At trial, petitioner also professed to rely on various "consultants" who advised him that there is no section in the Internal Revenue Code that makes a taxpayer liable for the Federal income tax.

Under some circumstances, a taxpayer may avoid liability for

---

[10](...continued)
satisfied the burden of production with respect to petitioner's liability for the accuracy-related penalty under sec. 6662(a) and (b)(1). See Lysek v. Commissioner, 583 F.2d 1088, 1094 (9th Cir. 1978) (the negligence penalty may be justified if the taxpayer fails to maintain adequate records), affg. T.C. Memo. 1975-293; Crocker v. Commissioner, 92 T.C. 899, 916-917 (1989) (same).

negligence if reasonable reliance on a competent professional adviser is shown. See United States v. Boyle, 469 U.S. 241, 250-251 (1985); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on another issue 501 U.S. 868 (1991). However, in order for a taxpayer's reliance to be reasonable, the taxpayer must show, inter alia, that the adviser was a competent individual and that the taxpayer actually relied in good faith on the advice. E.g., Tietig v. Commissioner, T.C. Memo. 2001-190, on appeal (11th Cir., Mar. 26, 2002).

In the present case, petitioner has failed to show either that his "consultants" were competent professionals or that he relied on their advice in good faith. Rather, it is clear that the "advice" rendered was nothing more than the type of tax protester rhetoric that has long been held to be frivolous and groundless. E.g., Rowlee v. Commissioner, 80 T.C. 1111, 1120 (1983) (rejecting taxpayer's argument that he is not a "person liable" for tax); Ebert v. Commissioner, T.C. Memo. 1991-629 (rejecting taxpayer's argument that there is no section of the Internal Revenue Code making a taxpayer liable for tax), affd. without published opinion 986 F.2d 1427 (10th Cir. 1993). Further, we are not convinced that petitioner relied on this "advice" in good faith.[11]

---

[11] See Diaz v. Commissioner, 58 T.C. 560, 564 (1972)

(continued...)

In view of the foregoing, we hold that petitioner is liable for the accuracy-related penalty under section 6662(a) for each of the years in issue.

E.  Conclusion

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues, as well as respondent's concession, see <u>supra</u> note 2,

<u>Decision will be entered under Rule 155</u>.

---

[11](...continued)
(distilling truth from the testimony of witnesses, whose demeanor we observe and whose credibility we evaluate, is "the daily grist of judicial life"); <u>Kropp v. Commissioner</u>, T.C. Memo. 2000-148 ("As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe.").